# EXHIBIT '1'

Case 8:20-cv-00632-DOC-ADS Document 1-1 Filed 04/01/20 Page 2 of 60 Page ID
30-2020-01130892-CU-RI-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Sarah Loose, Deputy Clerk.

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

**BRADLEY/GROMBACHER, LLP**
Robert N. Fisher (Ca. Bar No. 302919)
246 5th Avenue, Suite 522
New York, NY 10001
Telephone: (646) 443-6235
rfisher@bradleygrombacher.com

*Attorneys for Plaintiff and the Putative Class*

(Additional Counsel on Following Page)

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| ERIC SAVOY, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COLLECTOR'S UNIVERSE, INC., dba PROFESSIONAL SPORTS AUTHENTICATOR, a Delaware corporation; PWCC Marketplace, LLC, an Oregon corporation; RICK PROBSTEIN, an individual, dba PROBSTEIN123, and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO.  30-2020-01130892-CU-RI-CXC<br><br>**CLASS ACTION** COMPLAINT FOR:<br><br>1. **VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200**<br>2. **VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500**<br>3. **VIOLATION OF CALIFORNIA CIVIL CODE § 1750**<br>4. **BREACH OF EXPRESS WARRANTY**<br>5. **VIOLATION OF CONSUMER FRAUD LAWS**<br>6. **NEGLIGENT MISREPRESENTATION**<br>7. **FRAUD**<br>8. **RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c)-(d) ("RICO")**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Assigned: Judge William Claster<br>Dept:  CX104 |

-1-

CLASS ACTION COMPLAINT

**LAW OFFICES OF SAHAG MAJARIAN**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Blvd.
Tarzana, California 91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892
sahagii@aol.com

-2-
CLASS ACTION COMPLAINT

Plaintiff Eric Savoy (hereinafter referred to as "Plaintiff"), hereby submits his Class Action Complaint against Defendants Collector's Universe, Inc., dba Professional Sports Authenticator ("PSA"), a Delaware corporation, PWCC Marketplace, LLC ("PWCC"), an Oregon corporation, Rick Probstein, an individual, dba Probstein123 ("Probstein"), and Does 1-20 (hereinafter collectively referred to as "Defendants") on behalf of himself and the class of all others similarly situated as follows:

## INTRODUCTION

1.      "Baseball-card collecting really ought to be extinct. It's an analog hobby in a digital world, an expression of fandom in a sport whose attendance is in slow decline and whose cultural relevance is in free fall."[1]  Instead, the baseball trading card industry annually generates millions of dollars in sales.

2.      In fact, over the past decade, as the Standard & Poor's 500-stock index has roared back from the 2008 crash, an index of the top 500 baseball cards has done even better — beating it by more than double as of March 2018.[2]

3.      Though trading card collecting is often thought of as a hobby, prized, pristine cards have significant value to collectors.

4.      For example, the most highly valued baseball card is known as the T206 Honus Wagner card.  In 2016, one of those cards sold at auction for over $3 million.[3]

5.      Although the Honus Wagner card is perhaps the most well-known and extreme example of the value that trading cards can garner at auction, there are a plethora of cards that have changed hands for tens, hundred, and thousands of dollars.

6.      A critical factor in the valuation of each trading card is its physical condition. Pristine cards are worth far more than those that are faded, stained, have bent or frayed edges, or are otherwise damaged.

---

[1] https://www.theatlantic.com/magazine/archive/2019/11/how-baseball-cards-got-weird/598345/ (last viewed February 6, 2020)
[2] https://www.nytimes.com/2018/03/23/your-money/trading-cards-investment.html (Last viewed February 6, 2020)
[3] https://finance.yahoo.com/news/honus-wagner-baseball-card-sells-for-new-record-3-2-million-050323471.html (Last viewed February 6, 2020)

CLASS ACTION COMPLAINT

7.     Recently baseball card collectors determined that PSA had in fact graded a substantial number of altered cards on its 1-10 scale and many of those cards were sold by PWCC for substantial sums to unwitting consumers.

8.     This complaint seeks recourse for those consumers who were defrauded into purchasing cards at substantially inflated prices and into paying PSA fees to grade cards on the false promise that PSA's grading system would differentiate authentic originals from altered frauds.

**A. PSA Knowingly Graded Altered Cards**

9.     Defendant Collector's Universe, Inc. operates a trading card grading service under the name Professional Sports Authenticator.

10.     In broad strokes, PSA's service is supposed to operate as follows:  A card owner sends a card to PSA for rating.  PSA determines if the card is authentic and unaltered.  If it determines the card is authentic and unaltered, it grades the card on a 1-10 scale based on the physical condition of the card.  If PSA determines the card is altered, it will not grade the card on its 1-10 scale.

11.     The PSA grade directly impacts the market value of the card.

12.     A step up of one or two grades can increase a card's value by a factor of ten or more depending on the card.

13.     Contrary to its guarantees to consumers, PSA in fact graded a substantial number of altered cards on its 1-10 scale.

14.     For various reasons described in more detail below, Plaintiff believes that PSA knew that these cards were altered when it graded them.

15.     The altered cards were then sold with their newly inflated ratings.  As of July 18, 2019, it was reported that collectors had identified $1.4 million in sales of altered cards.[4]

/ / /

/ / /

[4] https://www.washingtonpost.com/sports/2019/07/18/baseball-card-collectors-suspected-rampant-fraud-their-hobby-now-fbi-is-investigating/ (Last viewed February 6, 2020)

CLASS ACTION COMPLAINT

16. The revelation that PSA graded altered cards which were then sold to unsuspecting buyers prompted the FBI to open an investigation.[5]

17. In addition to grading altered cards, PSA's fee schedule also incentivizes it to over-grade cards for consumers who are willing to pay more to have their cards graded.

18. PSA charges based on the perceived market value of cards and requires consumers to self-appraise the value of their cards before submission.

19. On information and belief, consumers receive higher grades when they appraise their cards at higher values and remit higher initial fees.

20. On information and belief, PSA knowingly preferentially graded cards at higher grading levels – including altered cards – for preferred customers who submitted a substantial number of cards at high appraisal values in order to obtain the substantial fees that accompanied those submissions.

**B. PWCC Knowingly Sold Altered Cards, Promoted Shill Bidding on its Sales, and Created Fraudulent "Eye Appeal" Designations**

21. Defendant PWCC Marketplace, LLC is an auction house that sells trading cards on behalf of consignors.

22. Many of the sales of altered cards identified by collectors were facilitated by PWCC.

23. On information and belief, PWCC knew that it was selling altered, graded cards that purported to be unaltered.

24. In fact, collectors identified instances in which PWCC sold PSA rated cards which were then altered, submitted to PSA, graded at a higher level, and sold through PWCC by the original buyer.

25. On information and belief, in addition to selling altered cards that were purchased and altered by others, PWCC and/or its principals facilitated the scheme by buying cards that were altered and submitted them to PSA for grading and then later selling them through PWCC.

---

[5] *Id.*

CLASS ACTION COMPLAINT

26.     Additionally, on information and belief, PWCC allowed and advised sellers to inflate the sales prices of their cards by engaging in shill bidding to increase the price of cards that were sold through PWCC.

27.     PWCC also instituted a system called "Eye Appeal" to differentiate between cards with identical grades.  On information and belief, PWCC used the Eye Appeal ratings to increase sales on cards in which its principal had a direct financial interest.

**C. Probstein Knowingly Sold Altered Cards**

28.     Probstein, like PWCC, operates as an auction house selling consigned cards.

29.     On information and belief, Probstein is the number one seller of cards on ebay by volume.

30.     Many of the sales of altered cards identified by collectors were facilitated by Probstein.

31.     On information and belief, Probtsein knew that he was selling altered, graded cards that purported to be unaltered.

32.     This class action is brought by Plaintiff on behalf of himself and all other individuals who used PSA's services to rate cards, who bought altered cards that were nonetheless rated by PSA on its 1-10 scale, and who currently hold altered PSA rated cards including, but not limited to, those purchased through PWCC.

33.     PSA guarantees consumers that it will not grade altered cards, and that if they purchase an altered PSA card, they will be made whole for the lost value of the card.

34.     PWCC guarantees that it will refund sales for undisclosed altered cards.

35.     PSA and PWCC simply did not live up to either of those guarantees.

36.     Rather, they defrauded consumers by grading cards that were altered and selling those cards causing unsuspecting consumers to purchase those cards at significantly inflated prices.

37.     PSA also defrauded consumers by, on information and belief, allowing consumers to receive higher grades for their cards based on their indicated willingness to pay higher fees or based on its lucrative business relationship with the party submitting the cards.

38.     Further, when the fraud was uncovered, consumers holding PSA graded cards experienced losses in the value of their cards based on lost faith in the PSA grades.

39.     Plaintiff seeks to recover damages for Defendants' unscrupulous behavior on behalf of himself and other impacted consumers.

## JURSIDICTION AND VENUE

40.     This Court has jurisdiction over this action and venue is proper because Defendant PSA maintains its headquarters in Orange County and a significant portion of the actions that gave rise to this suit occurred in this County.

41.     PWCC is subject to the jurisdiction of this Court because it directed the tortious acts complained of in this Complaint to California.

## PARTIES

42.     Plaintiff Eric Savoy is over the age of eighteen and a resident of El Cajon, California.

43.     Plaintiff was a victim of the Defendants' scheme.  During the relevant time period, Plaintiff has submitted his own cards to PSA for grading and purchased PSA graded cards.  During the relevant time period, Plaintiff believes that he purchased, at a premium price, at least one PSA graded card that was given a grade on the 1-10 scale despite in fact having been altered and that he purchased at least one altered card from PWCC and Probstein.  By creating doubt in the authenticity and value of rated cards, Defendants have caused all of Plaintiff's cards to decrease in value.

44.     Defendant Collector's Universe, Inc., dba Professional Sports Authenticator is a Delaware corporation having its principal place of business at 1610 E. St Andrew Place, Santa Ana, CA 92705.

45.     PSA conducts substantial business in California, including maintaining its principal place of business within the state.

46.     Defendant PWCC Marketplace, LLC is an Oregon corporation having its principal place of business at 7560 SW Durham Road, Tigard, OR 97224.

/ / /

47. PWCC conducts substantial business in California and directed its advertisements for altered cards to California and on information and belief sold altered cards to Class Members within California.

48. Rick Probstein is an individual who, on information and belief, resides in New Jersey.

49. Probstein conducts substantial business in California and directed his advertisements for altered cards to California and on information and belief sold altered cards to Class Members within California.

50. Plaintiff does not know the true names or capacities, whether individual, partner or corporate, of the Defendants sued herein as DOES 1 through 20, inclusive, and for that reason, said Defendants are sued under such fictitious names, and Plaintiff prays for leave to amend this complaint when the true names and capacities are known. Plaintiff is informed and believes and based thereon alleges that each of said fictitious Defendants were responsible in some way for the matters alleged herein and proximately caused Plaintiff and members of the general public and class to be subject to the illegal employment practices, wrongs and injuries complained of herein.

## FACTUAL ALLEGATIONS

51. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

**A. History of The Baseball Card Market**

52. Before the 1970's, varying prices for individual baseball cards were virtually unheard of.[6] It was only in the '70s, as Baby Boomers sought out favorite cards from their youth, that certain stars began to soar in value.[7] By the '80s, blue-chip cards were outperforming the S&P 500 and collecting had transformed from a sleepy novelty into a billion-dollar industry.[8]

53. Then the bottom fell out. In their eagerness to put new product in front of Boomers and their kids, manufacturers had flooded the market with cardboard.[9] One industry observer told

---

[6] https://www.theatlantic.com/magazine/archive/2019/11/how-baseball-cards-got-weird/598345/?utm_source=atl&utm_medium=email&utm_campaign=share (Last viewed February 6, 2020)
[7] *Id.*
[8] *Id.*
[9] *Id.*

CLASS ACTION COMPLAINT

1  the Journal that oversupply—too many competing sets; large print runs—had "choked the goose

2  that laid the golden eggs."[10]

3  54.    Late in the boom years, however, a solution to the subjectivity of condition

4  appeared: third-party grading firms.[11]  The first was Professional Sports Authenticator, or PSA,

5  which launched in 1991.  By 1998, PSA was grading 1 million cards a year and had inspired

6  numerous competitors.[12]

7  55.    With standardized assessments of condition in place, cards could be traded on

8  auction sites such as eBay without fear of fakes or frauds.[13] More importantly, PSA gave the

9  market detailed information about supply.[14]  Each time it grades a card, the company logs the

10  grade in a publicly accessible database, which has had a profound effect on pricing.[15]  For

11  example, of the approximately 4,000 Pete Rose rookie cards from 1963 that PSA had evaluated

12  as of early August 2019, only one scored PSA's top grade, Gem Mint 10.[16]  That card sold for

13  $717,000 in 2016.  The 30 that scored Mint 9, still less than 1 percent of those Roses, can be had

14  for about $35,000 each.[17]

15  **B.  PSA's Card Grading Business**

16  56.    When a consumer seeks to have a card graded by PSA, they must first evaluate the

17  projected value of their card after it is rated.[18]

18  57.    This self-declared value impacts the cost of submission to PSA.  Cards with

19  maximum declared values of $499 and under cost $20 to rate, while at the other extreme, cards

20  with declared values in excess of $100,000 incur a $5,000 rating charge.[19]

21  / / /

22

---

23  [10] *Id.*

[11] *Id.*

24  [12] *Id.*

[13] *Id.*

25  [14] *Id.*

[15] *Id.*

26  [16] *Id.*

27  [17] *Id.*

[18] https://www.psacard.com/resources/faq#104 (Last viewed February 6, 2020)

28  [19] https://www.psacard.com/pricing/#cards (Last viewed February 6, 2020)

CLASS ACTION COMPLAINT

58.    PSA indicates that once it receives cards for grading, "a series of PSA graders review [the] cards for authenticity" and "[i]f genuine, PSA looks for evidence of doctoring such as re-coloring or trimming."  Then, "[i]f the cards pass these two steps, PSA grades the condition of each card on a scale of 1-10, with 10 being best."[20]

59.    "After grading, PSA holders each card in its own tamper-evident case. A label within the case displays the card's pertinent information and unique certification number."[21]

60.    PSA maintain a comprehensive database of all cards that it has graded[22] as well as all its rated cards that have been sold.[23]

**C.  PSA's Pitch and Guarantee's to Consumers**

61.    PSA touts its services as increasing the value of cards, indicating that "PSA-certified trading cards often sell for premium prices due to the strength and credibility of the PSA brand."[24]

62.    PSA offers multiple assurances to consumers.  "PSA guarantees that all cards submitted to it shall be graded in accordance with PSA grading standards and under the procedures of PSA."[25]

63.    PSA's grading standards in turn provide that "PSA will not grade cards that bear evidence of trimming, re-coloring, restoration, or any other forms of tampering, or are of questionable authenticity."[26]

64.    These standards also provide a list of reasons why a card may be returned as ungradable including evidence of trimming, restoration, recoloration, and cleaning.[27]

---

[20] https://www.psacard.com/services/tradingcardgrading (Last viewed February 6, 2020). Although PSA does have grades outside the 1-10 scale including one for authentic but altered cards, the use of the term "grade," "graded," and/or "rating" in this Complaint refers to receiving a grade on the 1-10 scale.
[21] *Id.*
[22] https://www.psacard.com/pop/ (Last viewed February 6, 2020)
[23] https://www.psacard.com/auctionprices/ (Last viewed February 6, 2020)
[24] https://www.psacard.com/services/tradingcardgrading (Last viewed February 6, 2020)
[25] https://www.psacard.com/resources/faq#109 (Last viewed February 6, 2020)
[26] https://www.psacard.com/resources/gradingstandards#cards (Last viewed February 6, 2020)
[27] *Id.*

CLASS ACTION COMPLAINT

65.     Altered cards are worth a fraction of the value of unaltered cards in part because it is the authenticity of the cards that is prized.

66.     Finally, PSA offers a "Financial Guarantee of Grade & Authenticity."

67.     This guarantee "ensures the accuracy of the grade assigned to any PSA-graded card" by providing that "PSA guarantees that all cards submitted to it shall be graded in accordance with PSA grading standards and under the procedures of PSA."[28]

68.     PSA guarantees that

> If PSA, in fact, concludes the card in question no longer merits the PSA grade assigned or fails PSA's authenticity standards, PSA will either:
>
> 1.  Buy the card from the submitter at the current market value if the card can no longer receive a numerical grade under PSA's standards or,
>
> 2.  Refund the difference in value between the original PSA grade and the current PSA grade if the grade is lowered.  In this case, the card will also be returned to the customer along with the refund for the difference in value.

69.     Plaintiff and other consumers relied on these statements and guarantees in using PSA's services and in buying PSA rated cards.

**D.  PSA Knowingly Graded Altered Cards**

70.     Last year, collectors began posting online regarding their belief that something was awry.

71.     They had determined that cards were being altered and still receiving grades from PSA.  In fact, they found instances of PSA rated cards that had been purchased at auction, broken out of their "tamper proof" case, altered, and resubmitted.

72.     Those cards received higher grades on resubmission and were then sold at auction again.

73.     One example of this scheme that was identified is a 1952 Bowman Stan Musial card.  In 2017, it was sold at auction for $2,800, its price deflated by a stray black mark on its

---

[28] https://www.psacard.com/About/FinancialGuarantee/ (Last viewed February 6, 2020)

white frame.  Seven months later, the same card sold for $28,100 after it had been altered to remove the black mark.[29]

74.    Another example is a 1952 Mickey Mantle card which sold for almost 60,000 after it received a 4.5 grade.

75.    Yet another example is a T206 Billy Maloney card which dates back to 1909 to 1911.  It was initially sold on August 19, 2017 for $81 bearing a grade of 4.5.  On information and belief, it was altered and submitted to PSA who graded it at a 7.  It was then sold at auction on February 5, 2018 for $1,000.

76.    Collectors have uncovered scores of examples of altered cards that were graded by PSA.

77.    PSA knew or should have known that it was grading altered cards.

78.    First of all, experts in the field including those used by PSA to grade cards are able to identify indicia of alterations such as removal of stains and smoothing out of creases.

79.    Second, when a card is trimmed, it no longer fits perfectly into a PSA case. Trimmed cards can often be identified by a gap between the card and the edge of the case and they may even move within the case.

80.    Third, as noted, PSA maintains a record of all the cards that it rates including pictures of those cards as well as a record of purchasers of PSA rated cards.

81.    Thus, PSA should have been able to determine by visual inspection which cards were altered, and even if that had failed, it could have cross-referenced cards that were being submitted for rating with its previously rated cards and with purchasers of its cards and determined that cards were being altered and resubmitted.

82.    Even though there may be multiple copies of various cards in circulation, cards (particularly older cards) have distinctive characteristics such as how the image on the card is centered in the frame, stray print marks, the pattern of the fibers on the cardboard and dirt or debris caused by aging, that should allow close observers to differentiate between like copies.

---

[29] https://www.washingtonpost.com/sports/2019/07/18/baseball-card-collectors-suspected-rampant-fraud-their-hobby-now-fbi-is-investigating/ (Last viewed February 6, 2020)

83.     Indeed, collectors were able to use PSA's records to uncover the scheme, yet PSA contends that it continued to grade altered cards without noticing from its own records that it had previously graded those cards at a lower grade.

**E.    PSA Used a Problematic Self Appraisal System and Gave Preferential Treatment to High Volume, High Value Customers**

84.     As noted above, PSA requires consumers who submit cards to them to self-evaluate the potential value of the card after it is graded.  PSA then charges consumers for grading based on the perceived value (although in some instances PSA may require the submitter to remit additional funds because the card is deemed to be worth more than the self-appraisal value.)

85.     PSA maintains that it grades cards on an objective basis with a "small (yet sometimes significant) subjective element."  However, this subjective element is meant to allow graders some leeway "based on the strength or weakness of the eye appeal, to make a judgment call on the grade of a particular card" and to "make a call on a card that falls on the line between two grades."[30]

86.     On information and belief, rather than grading cards purely objectively, PSA is more likely to give a card a higher grade if the consumer submits it a higher declared value (and pays a higher fee).

87.     In other words, on information and belief, each submission can come with an upfront bribe.  By declaring a card at a high value and paying a large fee, consumers can influence the grade they will receive.

88.     Likewise, on information and belief PSA gave preferential treatment to customers who submitted substantial numbers of cards and paid significant appraisal fees to them.  Such preferential treatment included, on information and belief, graded altered cards on their behalf and grading cards at higher values than they would have otherwise garnered.

**F.    PWCC's Pitch and Guarantees to Customers**

89.     PWCC represents that "[s]ince 1998, [it] has provided buyers and sellers of

---

[30] https://www.psacard.com/resources/gradingstandards#cards (Last viewed February 6, 2020)

investment-caliber trading cards with an efficient, honest, and predictable marketplace" and that it "offers buyers and sellers a superior marketplace, principled in reduced transaction costs, faster turn- times, increased liquidity, and greater transparency."  It notes that cards are an investment, and indicates that "[t]rust" is the "bedrock of the PWCC marketplace."[31,32]

90.    PWCC further represents that it "handle[s] every trade with the highest level of integrity and care."[33]

91.    PWCC advises buyers that "[s]afeguarding the integrity of bidding on our auctions is our highest priority, as is the assurance that every item we broker is accurately described and authentic."[34]

92.    PWCC mandates that "[a]ltered assets cannot be sold on the PWCC Marketplaces unless this detail is disclosed during the sale."[35]

93.    PWCC guarantees that it will "remove altered assets from our active marketplace and, when altered assets are graded, to assist the Third-Party Authenticator in removal of altered assets from circulation and to protect investors."[36]

94.    PWCC further guarantees that "[a]ny professionally-graded card which is determined to be altered while in possession of PWCC will not be sold" and that "[s]hould a professionally-graded card previously sold by PWCC be determined to be altered, that sale becomes null and void and the buyer is entitled to a full refund of the purchase price. This guarantee applies to sales dating back to January 1, 2015, which marks the start of PWCC's complete sales record database."[37]

95.    On information and belief, PWCC has not abided by these representation and guarantees.  Instead, as detailed below, it knowingly sold altered cards without indicating that

---

[31] https://www.pwccmarketplace.com/about-the-marketplace  (Last viewed February 6, 2020)
[32] Although PWCC refers to itself as a marketplace, it conducts a substantial portion of its sales through eBay. *See* https://www.ebay.com/str/PWCC-Marketplace?_trksid=p2047675.l2563 (Last viewed February 6, 2020)
[33] https://www.pwccmarketplace.com/about-pwcc  (Last viewed February 6, 2020)
[34] https://www.pwccmarketplace.com/pwcc-for-buyers  (Last viewed February 6, 2020)
[35] *Id.*
[36] https://www.pwccmarketplace.com/marketplace-tenets  (Last viewed February 6, 2020)
[37] *Id.*

they were altered and refused to issue refunds of the purchase prices for those altered cards.

### G.  PWCC Knowingly Sold Altered Cards

96.    Collectors have identified dozens of altered cards sold by PWCC.[38]

97.    For example, the altered 1952 Mickey Mantle, 1909-1911 Billy Maloney cards described above were both purchased on PWCC, altered, regraded by PSA, and then sold by PWCC with the new altered rating.

98.    Likewise, the 1952 Stan Musial card described above was sold on PWCC after it had been altered.

99.    On information and belief, PWCC not only engaged in the sale of altered cards, but PWCC or its principals also purchased cards that were later altered and sold by PWCC.

100.    PWCC knew that these cards were altered and it knew that it was selling altered cards because, as described above, experts in the trading card field should be able to identify alterations and PWCC was itself involved in the alteration scheme.

### H.  PWCC Used Eye Appeal Designations to Enrich Itself or its Principals

101.    PWCC indicates on its website that "[t]here exists a range of visual quality within all technical grades rendered by 3rd party graders" and each "acceptable technical range carries variance of visual quality, resulting in some cards possessing premium eye appeal."[39]

102.    Based on this range in visual appeal between equally graded cards, PWCC has created its own system of designating cards based on their purported "Eye Appeal."  In other words, PWCC has placed its own grades on top of the grades of the third party graders such as PSA.[40]

103.    On information and belief, PWCC used its "Eye Appeal" system to disproportionately grade cards in which PWCC and/or its principals held a financial interest as having strong Eye Appeal, thereby increasing their value for sale.

104.    PWCC then sold these cards to unwitting consumers for inflated values.

---

[38] https://www.blowoutforums.com/showthread.php?t=1290614 (Last viewed February 6, 2020)
[39] https://www.pwccmarketplace.com/eye-appeal  (Last viewed February 6, 2020)
[40] *Id.*

**I.   PWCC Allowed and Encouraged Shill Bidding on its Sales**

105.   As described above, shill bidding is a process by which auction prices are driven up through fraudulent bidding by the seller or those working in conjunction with the seller.

106.   On information and belief, PWCC allows and encourages its sellers to shill bid on their cards that are being sold by PWCC.

107.   By encouraging and allowing this shill bidding, PWCC has driven up the prices on its sales, thereby increasing its own profits to the detriment of consumers who are paying artificially inflated prices.

**J.   Probstein Knowingly Sold Altered Cards**

108.   Collectors have identified many altered cards sold by Probstein.[41,42]

109.   For example, collectors have identified a Sidney Crosby autographed rookie card that was altered by the substitution of a fake patch and sold by Probstein.

110.   Probstein knew that he was selling altered cards because, as described above, experts in the trading card field should be able to identify alterations.

**K.   The Fallout from the Scheme**

111.   Once the card alteration scheme was uncovered last year, collectors began to identify further examples of altered cards that had been graded by PSA and sold to unsuspecting consumers through PWCC and other means.

112.   Consumers further identified PWCC's suspected shill bidding practices.

113.   Consumers were impacted to their detriment in a number of ways.

114.   First, those who had purchased altered cards learned that they had been defrauded and the card values plummeted.

115.   On information and belief, PSA has failed to honor its guarantee to pay the difference between the value of the graded cards and what they are worth as recognized altered cards.

116.   On information and belief, PWCC has failed to honor its guarantee to refund purchasers of altered cards.

---

[41] https://www.blowoutforums.com/showthread.php?t=1312335 (Last visited February 7, 2020)
[42] https://www.blowoutforums.com/showthread.php?t=1300356 (Last visited February 7, 2020)

117.    Second, those who were holding unaltered PSA graded cards experienced declining trust in the rating from potential purchasers and a commensurate drop in value of their cards.

118.    Third, those who had paid PSA to rate their cards were damaged because they were paying for a service that was not what it purported to be and were receiving lower grades for their cards than others who submitted altered cards or over-valued their cards in self-appraisal and received higher grades.

119.    Moreover, throughout the scheme, collectors with legitimate PSA graded cards were damaged by the presence of highly rated altered cards which distorted the market to make it more difficult to obtain value for lower graded unaltered cards.

## **Tolling Of The Statute Of Limitations**

### **Discovery Rule Tolling**

120.    Plaintiff had no way of knowing about Defendants' deception with respect to the grading and sale of altered cards.  Plaintiff only learned of the scheme when it was publicly exposed.  Plainly, Defendants were intent on hiding their behavior from consumers like Plaintiff.

121.    Within the time period of any applicable statutes of limitation, Plaintiff could not have discovered through the exercise of reasonable diligence that Defendants were concealing the conduct complained of herein.

122.    Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect the scheme complained of herein nor would a reasonable and diligent investigation have disclosed that Defendants were engaged in a practice of grading and selling altered cards in direct contradiction to the representations that Defendants made to induce consumers to use their services.

123.    For these reasons, all applicable statutes of limitation were tolled by operation of the discovery rule prior to the public discovery of the scheme.

/ / /

/ / /

/ / /

**Fraudulent Concealment Tolling**

124.    All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

125.    Instead of disclosing the scheme Defendant PSA falsely represented that it did not grade altered cards and Defendant PWCC falsely represented that it would not sell altered cards.

**Estoppel**

126.    Defendants were under a continuous duty to disclose to Plaintiff the truth regarding the grading and sale of altered cards.

127.    Defendants knowingly, affirmatively, and actively concealed the true nature of their practice with altered cards.

128.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

129.    Plaintiff brings this suit as a class action pursuant to California Code of Civil Procedure § 382 on behalf of himself and all others similarly situated who have been subject to illegal conduct perpetrated by Defendants.

130.    Plaintiff seeks certification of the following class:

All natural persons residing in the United States or its territories, excluding the Court and staff, who submitted cards for rating to PSA, purchased PSA rated cards, or owned PSA rated cards during the time period when PSA was rating altered cards and up to entry of judgment in this case.

131.    Additionally, Plaintiff seeks certification of the following subclass

All members of the class who resided in California at any point during the operation of the card altering scheme complained of.

132.    Excluded from the Class are Defendants, and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of Defendants.

133.    The members of the Class are believed to so numerous that joinder of all members of each Class is impracticable.  While the exact number and identities of the Class members are

-18-

unknown at this time, that information can be obtained from Defendant's records and through discovery.

134.   Common questions of law and fact exist as to all members of the Class.

135.   These common legal and factual questions predominate over any questions affecting only individual members of the class.  These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

       a.   Whether Defendant PSA graded altered cards;

       b.   Whether Defendant PSA knew or should have known that it graded altered cards;

       c.   Whether PWCC sold altered cards;

       d.   Whether PWCC purchased cards for alteration and sale;

       e.   Whether PWCC allowed and/or encouraged shill bidding on its sales;

       f.   Whether PWCC used its Eye Appeal system to enrich itself or its principals;

       g.   Whether Plaintiff and the Class have been injured by Defendants' conduct; and

       h.   Whether Defendants' conduct was willful.

136.   The claims of the named Plaintiff are typical of the claims of the members of the Class.  Plaintiff and the members of the Class sustained losses, injuries and damages arising from Defendants' common policies, practices, procedures, protocols, routines, and rules which were applied to members of the Putative Class as well as Plaintiff.  Plaintiff seeks recovery for the same type of losses, injuries, and damages as were suffered by the members of the Putative Class.

137.   Plaintiff is an adequate representative of the Putative Class because he is a member of the class, and his interests do not conflict with the interests of the members he seeks to represent. Plaintiff has retained competent counsel, experienced in the prosecution of complex class actions, and together Plaintiff and his counsel intends to prosecute this action vigorously for the benefit of the classes. The interests of the Putative Class will fairly and adequately be protected by Plaintiff and his attorneys.

/ / /

138.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Putative Class Members is impracticable.  It would be unduly burdensome to the courts if these matters were to proceed on an individual basis, because this would potentially result in hundreds of individuals, repetitive lawsuits. Further, individual litigation presents the potential for inconsistent or contradictory judgments, and the prospect of a "race to the courthouse," and an inequitable allocation of recovery among those with equally meritorious claims.  By contrast, the class action device presents far fewer management difficulties, and provides the benefit of a single adjudication, economics of scale, and comprehensive supervision by a single court.

139.    The various claims asserted in this action are additionally or alternatively certifiable under the provisions of the California Code of Civil Procedure § 382 because:

    a.    The prosecution of separate actions by hundreds of individual Class Members would create a risk or varying adjudications with respect to individual class members, thus establishing incompatible standards of conduct for Defendants, and

    b.    The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that, as a practical matter, would be dispositive of the interest of the other Class Members who are not a party to such adjudications and would substantially impair or impede the ability of such non-party Class Members to protect their interests.

## FIRST CAUSE OF ACTION

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, *et seq*.**

**(By Plaintiff and the California Subclass against Defendants PSA and PWCC and Does 1-20)**

140.    Plaintiff repeats and re-alleges the contents of all preceding paragraphs as if fully set forth at length.

141.    This cause of action is brought pursuant to *Business and Professions Code* §

-20-

CLASS ACTION COMPLAINT

17200, *et* seq.

142.    In advertising their services, Defendants made false and misleading statements. Specifically, as set forth above, Defendant PSA represents that it does not grade altered cards when in fact it did grade altered cards.  PSA guaranteed that it would reimburse the difference between cards that were misgraded.

143.    Defendant PWCC represents that it does not sell undisclosed altered cards when it in fact did sell undisclosed altered cards.  PWCC guarantees that it will refund purchasers of undisclosed altered cards.

144.    On information and belief, neither PSA nor PWCC have stood by their guarantees.

145.    Defendants were aware that the claims they made about their services were false, misleading and unsubstantiated.

146.    As alleged in the preceding paragraphs, the misrepresentations and omissions by Defendants of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17200.

147.    In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitute unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of California *Business & Professions Code* § 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of California *Business & Professions Code* § 17500.

148.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

149.    All of the conduct alleged herein occurs and continues to occur in Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

150.    Pursuant to California *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising that their service does not grade altered

-21-

cards.  Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

## SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

### (By Plaintiff and the California Subclass against Defendants PSA and PWCC and Does 1-20)

151.    Plaintiff repeats and re-alleges the contents of all preceding paragraphs as if fully set forth at length.

152.    This cause of action is brought pursuant to California *Business and Professions Code* § 17500, *et seq.* (known as California's False Advertising Law or "FAL").

153.    The FAL prohibits the dissemination of any advertisement which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to by untrue or misleading.  Cal. Bus. & Prof. Code §17500.

154.    In advertising their services, Defendants made false and misleading statements. Specifically, as set forth above, Defendant PSA represents that it does not grade altered cards when in fact it did grade altered cards.  PSA guaranteed that it would reimburse the difference between cards that were misgraded.

155.    Defendant PWCC represents that it does not sell undisclosed altered cards when it in fact did sell undisclosed altered cards.  PWCC guarantees that it will refund purchasers of undisclosed altered cards.

156.    On information and belief, neither PSA nor PWCC have stood by their guarantees.

157.    Defendants were aware that the claims they made about their services were false, misleading and unsubstantiated.

158.    As alleged in the preceding paragraphs, the misrepresentations by Defendants of the material facts detailed above constitute an unfair and fraudulent business practice within the meaning of California *Business & Professions Code* § 17500.

159.    In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of California *Business & Professions Code* §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of California *Business & Professions Code* § 17500.

160.    Pursuant to California *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Classes seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising that they do not grade altered cards and will guarantee their grade.  Likewise, Plaintiff and the members of the Classes seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

### **THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq*.**
**(By Plaintiff and the California Subclass against Defendants and Does 1-20)**

161.    Plaintiff repeats and re-alleges the contents of all preceding paragraphs as if fully set forth at length.

162.    This cause of action is brought pursuant to California *Civil Code* § 1750, *et seq*., the Consumers Legal Remedies Act.

163.    Plaintiff, as well as each member of the California Subclass, constitutes a "consumer" within the meaning of California *Civil Code* § 1761(d).

164.    Defendant PSA's grading of cards for a fee and PWCC's sale of cards constitute "transactions" within the meaning of California *Civil Code* § 1761(e).

165.    The grading services and cards purchased by Plaintiff and the Consumer Class constitute "goods" and "services" under California *Civil Code* § 1761(a) and (b).

166.    The policies, acts, and practices heretofore described were intended to result in the sale of services to the consuming public and violated and continue to violate Section 1770(a)(7)

of the Act, which prohibits, "[r]epresenting that goods or services are of a particular standard, quality, grade, or that goods are of a particular style or model, if they are of another," and Section 1770(a)(14), which prohibits, "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

167.   Defendants fraudulently deceived Plaintiff and the Class by representing that they were only grading and selling unaltered cards and that they would guaranty the grades of their cards and their unaltered nature.   In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Class.   Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

168.   Defendants' actions as described hereinabove were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

169.   Pursuant to § 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations.   Plaintiff shall be irreparably harmed if such an order is not granted.

170.   Pursuant to Civil Code §1782, Plaintiff will give Defendants notice by letter, by certified mail, of the particular violations of Civil Code § 1770.   The Notice will request that Defendants rectify the problems associated with the actions alleged in this Complaint, and give notice to all affected consumers of its intent to so act.

171.   Plaintiff reserves the right to amend this Complaint to include a request for damages under the CLRA after complying with California *Civil Code* 1782(a) within thirty (30) days after the exhaustion of filing requirements.

172.   If Defendants have failed to provide appropriate relief for their violations of the CLRA within 30 days of their receipt of the CLRA Demand Notice, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiff will be entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

/ / /

CLASS ACTION COMPLAINT

## FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(By Plaintiff, on behalf of himself and the Class Against Defendants PSA and PWCC and Does 1-20)**

173.    Plaintiff repeats and re-alleges the contents of all preceding paragraphs as if fully set forth at length.

174.    Plaintiff brings this Count individually under the laws of California and on behalf of the Class as a whole (in states having similar laws regarding express warranties).

175.    Defendant PSA represented that it did not grade altered cards and that they would reimburse holders of graded cards if their cards were determined to have an inaccurate grade.

176.    Defendant PWCC represented that it did not sell altered cards without disclosing their altered status and that it would

177.    Defendants' representations are made to Plaintiff and the other members of the Classes at the point of purchase and are part of the description of their services.  Those promises constituted express warranties and became part of the basis of the bargain, between Defendants on the one hand, and Plaintiff and the Class on the other.

178.    In addition, or in the alternative, Defendants made each of their above-described representations to induce Plaintiff and the Class to rely on such representations, and they each did so rely on Defendants' representations as a material factor in their decisions to purchase PSA's services and purchase cards that were PSA rated.  Plaintiff and other members of the Class would not have purchased these cards and services but for these representations and warranties.

179.    Defendants' services did not, in fact, meet the representations Defendants made about them, as described herein, because they were defective.

180.    Defendants have refused to acknowledge and reimburse the Class Members.

181.    Defendants thereby breached their express warranties.

182.    At all times relevant to this action, Defendants made false representations in breach of the express warranties and in violation of state express warranty laws, including:

CLASS ACTION COMPLAINT

1        a.  Alaska St. §45.02.313;

2        b.  Ariz. Rev. Stat. Ann. §47-2313;

3        c.  Ark. Code Ann. §4-2-313;

4        d.  Cal. Com. Code §2313;

5        e.  Colo. Rev. Stat. §4-2-313;

6        f.  Conn. Gen. Stat. Ann. §42a-2-313;

7        g.  D.C. Code §28:2-313;

8        h.  Fla. Stat. §672.313;

9        i.  Haw. Rev. Stat. §490:2-313;

10       j.  810 Ill. Comp. Stat. 5/2-313;

11       k.  Ind. Code §26-1-2-313;

12       l.  Kan. Stat. Ann. §84-2-313;

13       m.  La. Civ. Code. Ann. art. 2520;

14       n.  Maine Rev. Stat. Ann. 11 §2-313;

15       o.  Mass. Gen. Laws Ann. 106 §2-313;

16       p.  Minn. Stat. Ann. §336.2-313;

17       q.  Miss. Code Ann. §75-2-313;

18       r.  Mo. Rev. Stat. §400.2-313;

19       s.  Mont. Code Ann. §30-2-313;

20       t.  Neb. Rev. Stat. §2-313;

21       u.  Nev. Rev. Stat. §104.2313;

22       v.  N.H. Rev. Stat. Ann. §382-A:2-313;

23       w.  N.J. Stat. Ann. §12A:2-313;

24       x.  N.M. Stat. Ann. §55-2-313;

25       y.  N.Y. U.C.C. Law §2-313;

26       z.  N.C. Gen. Stat. Ann. §25-2-313;

27       aa.  Okla. Stat. Ann. tit. 12A, §2-313;

28

bb. Or. Rev. Stat. §72.3130;

cc. Pa. Stat. Ann. tit. 13, §2313;

dd. R.I. Gen. Laws §6A-2-313;

ee. S.C. Code Ann. §36-2-313;

ff. S.D. Codified Laws. §57A-2-313;

gg. Tenn. Code Ann. §47-2-313;

hh. Tex. Bus. & Com. Code Ann. §2.313;

ii. Utah Code Ann. §70A-2-313;

jj. Vt. Stat. Ann. tit. 9A§2-313;

kk. Wash. Rev. Code §62A.2-313;

ll. W. Va. Code §46-2-313;

mm. Wyo. Stat. Ann. §34.1-2-313;

183.   The above statutes do not require privity of contract in order to recover for breach of express warranty.

184.   Plaintiff has complied with the warranty terms. Plaintiff will make a demand upon Defendants PSA and PWCC to perform under the warranty terms, and maintain this action only if Defendants fails to comply with those terms.

185.   As a direct and proximate result of the breach of express warranties, Plaintiffs have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to other property.

186.   Wherefore, Plaintiff and the Classes demand judgment against Defendants for compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Classes may be entitled.

### **FIFTH CAUSE OF ACTION**

### **VIOLATIONS OF CONSUMER FRAUD LAWS**

**(By Plaintiff, on behalf of himself and the Class Against Defendants and Does 1-20)**

187.   Plaintiff repeats and re-alleges the contents of all preceding paragraphs as if fully set forth at length.

-27-

188.    Plaintiff brings this Count individually under the laws of California and on behalf of all other members of the Class in states having similar laws regarding consumer fraud and deceptive trade practices.

189.    Plaintiff and each of the other members of the Class are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they purchased PSA's services or PSA rated cards.

190.    The consumer protection laws of the State in which Plaintiff and the other members of the Class purchased Defendant's services or PSA rated cards declare that unfair or deceptive acts or practices, in the conduct of trade or commerce, are unlawful.

191.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

a.    Alabama Deceptive Trade Practices Act, Ala. Code §8-19-1 *et seq.*;

b.    Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Code §45.50.471 *et seq.*;

c.    Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101 *et seq.*;

d.    California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*;

e.    Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.*;

f.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a *et seq.*;

g.    Delaware Deceptive Trade Practices Act, Del. Code tit. 6§2511 *et seq.*;

h.    District of Columbia Consumer Protection Procedures Act, D.C. Code §28 3901 *et seq.*;

i.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201 *et seq.*;

j.    Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390 *et seq.*;

k.    California Unfair and Deceptive Practices Act, California Revised Statues §480-1 *et*

*seq.*, and California Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §481A-1 *et seq.*;

l.   Idaho Consumer Protection Act, Idaho Code Ann. §48-601 *et seq.*;

m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann §50 626 *et seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §367.110 *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §365.020 *et seq.*;

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §51:1401 *et seq.*;

q.   Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5 §205A *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, §1211 *et seq.*,

r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.   Michigan Consumer Protection Act, Mich. Comp. Laws §445.901 *et seq.*;

t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann.§325F.68 *et seq.,* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.43 *et seq.*;

u.   Mississippi Consumer Protection Act, Miss. Code Ann. §§75-24-1 *et seq.*;

v.   Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010 *et seq.*;

w.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §30-14-101 *et seq.*;

x.   Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601 *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301 *et seq.*;

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §598.0903 *et seq.*;

z.   New Hampshire Consumer Protection Act,  N.H. Rev. Stat. §358-A:1 *et seq.*;

aa.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §56:8 1 *et seq.*;

bb.  New Mexico Unfair Practices Act, N.M. Stat. Ann. §57 12 1 *et seq.*;

cc.  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §349 *et seq.*;

dd.  North Dakota Consumer Fraud Act, N.D. Cent. Code §51 15 01 *et seq.*;

ee.  Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §1345.02 and 1345.03; Ohio Admin. Code §109:4-3-02, 109:4-3-03, and 109:4-3-10;

ff.  Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §751 *et seq.*;

gg.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat §646.608(e) & (g);

hh.  Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws §6-13.1-1 *et seq.*;

ii.  South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq.*;

jj.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§37 24 1 *et seq.*;

kk.  Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 *et seq.*;

ll.  Texas Deceptive Trade Practices Act Tex. Bus. & Com §17.46 *et seq.*;

mm. Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §2451 *et seq.*;

nn.  Washington Consumer Fraud Act, Wash. Rev. Code §19.86.010 *et seq.*;

oo.  West Virginia Consumer Credit and Protection Act, West Virginia Code §46A-6-101 *et seq.*; and

pp.  Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 *et seq.*

192.    PSA and PWCC provide services and sell goods within as to which these consumer protection laws apply.

193.    In the conduct of trade or commerce regarding its services, Defendants engaged in one or more unfair or deceptive acts or practices including, but not limited to, uniformly representing to Plaintiff and each member of the Classes that PSA only graded unaltered cards and PWCC did not sell altered cards without disclosing same.

194.    Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

195.    Defendants knew, or should have known, that their representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive.

/ / /

196.    Defendants used or employed such deceptive and unlawful acts or practices with the intent that Plaintiff and members of the Classes rely thereon.

197.    Plaintiff and the other members of the Classes did so rely.

198.    Plaintiff and the other members of the Classes purchased cards rated by Defendant PSA or paid PSA for rating services which misrepresented the characteristics and nature of the rating service and the guarantee that cards were properly rated.

199.    Plaintiff and the other members of the Classes would not have purchased cards rated by PSA or paid PSA for rating services but for Defendant's deceptive and unlawful acts.

200.    Class Members purchased PWCC cards that were altered without disclosing same and would not have made those purchases but for PWCC's deceptive and unlawful acts.

201.    As a result of Defendants' conduct, Plaintiff and the other members of the Classes sustained damages in amounts to be proven at trial.

202.    Defendants' conduct showed complete indifference to, or conscious disregard for, the rights and safety of others such that an award of punitive and/or statutory damages is appropriate under the consumer protection laws of those states that permit such damages to be sought and recovered.

203.    Plaintiffs and the other Class Members could not have uncovered the fraud through the exercise of reasonable diligence and only learned of the fraud when it was uncovered in 2019.

## SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**(By Plaintiff, on Behalf of Himself and the Class against Defendants and Does 1-20)**

204.    Plaintiff repeats and re-alleges the contents of all preceding paragraphs as if fully set forth at length.

205.    In making representations of fact to Plaintiff and the Class about its services, Defendants failed to fulfill its duty to disclose the material facts alleged above.  Such failure to disclose on the part of Defendants amounts to negligent misrepresentation.

206.    Plaintiff and the other members of the Class reasonably relied upon such

-31-

representations and omissions to their detriment.

207.    Plaintiff and the other members of the Class, as a direct and proximate cause of Defendants' negligent misrepresentations, reasonably relied upon such misrepresentations to their detriment.  By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### FRAUD

**(By Plaintiff, on Behalf of Himself and the Class against Defendants and Does 1-20)**

208.    Plaintiff repeats and re-alleges the contents of all preceding paragraphs as if fully set forth at length.

209.    Defendants have continuously engaged in numerous acts and omissions that constitute fraudulent concealment.

210.    Defendants concealed the fact that PSA was grading altered cards and continuously affirmatively misrepresented that it would only grade unaltered cards and that PWCC was selling altered cards without disclosing same.

211.    On information and belief, Defendants knew these representations were false when made.

212.    Defendants had a duty to disclose to their customers the truth about their practices with respect to altered cards.

213.    Class Members relied on these misrepresentations to their detriment because they continued to submit cards for grading and paid fees for those submissions and unwittingly purchased altered cards.

214.    The misrepresentations were material because, had they been known to the Class Members, they would have stopped using PSA's services and would not have purchased altered cards.

215.    As a result of their reliance, Plaintiff and the other Class Members have been injured in an amount to be proven at trial.

216.    Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the Class Members.  Plaintiff and the other Class Members are therefore entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF 18 U.S.C. § 1962(c)-(d) - THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")

**(By Plaintiff, on Behalf of Himself and the Class against Defendants and Does 1-20)**

217.    Plaintiff repeats and re-alleges the contents of all preceding paragraphs as if fully set forth at length.

218.    At all relevant times, the Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

219.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).

220.    Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions.  See 18 U.S.C. § 1962(d).

221.    The Defendants sought to increase their profits through an unlawful scheme.  The Defendants, along with other entities and individuals, were employed by or associated with, and conducted or participated in the affairs of, one or several RICO enterprises whose purpose was to deceive consumers and the public into believing that they graded and sold unaltered baseball cards only, when in fact they were knowingly grading and selling altered cards for significantly inflated values.

222.    While perpetrating this unlawful scheme, Defendants graded cards from Plaintiff and sold cards to the Class Members.  Plaintiff and the Class Members were not aware of the

unlawful scheme undertaken by Defendants. Plaintiff and the Class Members hold a significant number of PSA graded cards. Because of Defendants actions, they paid to have their cards rated by PSA to confirm their authenticity and unaltered status and paid PWCC and Probstein to purchase cards even though some of those cards were fraudulently altered. When the scheme was revealed, the value of their PSA rated cards dropped. In this regard, part of the service Plaintiff and the Class Members were purchasing from PSA was the ability to distinguish their PSA graded cards from ungraded cards, including the ability to represent that the cards were unaltered. Because of the scheme, Plaintiff and the Class Members can no longer rely on the PSA grading to establish the unaltered nature of their cards.

**The RICO Enterprise**

223.    Defendants, along with other individuals and entities, including Defendant's principals and unknown third parties involved in the grading and sale of cards, operated an association-in-fact enterprise, which was formed for the purpose of grading and selling altered trading cards throughout the United States, and through which they conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4).

224.    In the alternative, each of Defendants PSA, PWCC, and Probstein123 constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the Defendants conducted their pattern of racketeering activity in the United States described herein.

225.    At all relevant times, the enterprise described above constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in Defendants' profit-making scheme.

**The Enterprise Sought to Increase Defendants' Profits and Revenues**

226.    It is unknown when the RICO enterprise began operating, but it continued in operation until at least the summer of 2019, when collectors publicly identified that PSA, PWCC, and Probstein had graded and sold altered cards in large numbers.

227.    At all relevant times, the enterprise: (1) had an existence separate and distinct from each Defendant; (2) was separate and distinct from the pattern of racketeering in which the

Defendants engaged; and (3) was an ongoing and continuing organization consisting of legal entities, including the Defendants and other entities and individuals associated for the common purpose of grading and selling altered baseball cards to consumers and deriving profits and revenues from those activities. Each member of the enterprise shared in profits derived from increased revenues generated by the scheme.

228. The enterprise functioned by representing that fraudulently altered trading cards were not altered and were in fact highly desirable cards in excellent condition and by selling those cards to the consuming public. Many of the cards graded and sold by Defendants are legitimate, including cards that have not been altered. However, the Defendants and their co-conspirators, through their illegal enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the Defendants and the other entities and individuals associated-in-fact with the enterprise's activities through the illegal scheme to grade and sell the altered cards.

229. The enterprise engaged in, and its activities affected interstate and foreign commerce, because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement and grading and sale of the altered cards throughout the country, and the receipt of monies from the grading and sale of the same.

230. On information and belief, within the enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. On information and belief, the enterprise used this common communication network for the purpose of selling the altered cards to the general public nationwide.

231. Each participant in the enterprise had a systematic linkage to each other through corporate ties, contractual relationships, financial ties, and continuing coordination of activities. Through the enterprise, the Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share, and minimizing losses.

232. The Defendants participated in the operation and management of the enterprise by directing its affairs, as described herein. While the Defendants participated in, and are members

-35-

of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

233.    PSA participated in, operated, and/or directed the enterprise.  PSA graded the altered cards and concealed the truth about the cards while collecting revenues and profits from the same.

234.    PWCC participated in, operated, and/or directed the enterprise.  PWCC sold altered cards (as well as purchased cards to be altered) and concealed the truth about the cards while collecting revenues and profits from the same.

235.    Probstein participated in, operated, and/or directed the enterprise.  Probstein sold altered cards (as well as purchased cards to be altered) and concealed the truth about the cards while collecting revenues and profits from the same.

236.    Without the Defendants' willing participation, the enterprise's scheme and common course of conduct the scheme would not have been successful.

237.    On information and belief, the Defendants directed and controlled the ongoing organization necessary to implement the scheme through communications of which Plaintiff cannot fully know at present, because such information lies in the Defendants' and others' hands.

**Predicate Acts – Mail and Wire Fraud**

238.    To carry out, or attempt to carry out the scheme, the Defendants, each of whom is a person associated-in-fact with the enterprise, did knowingly conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and which employed the use of the wire facilities, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

239.    Specifically, the Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.  The multiple acts of racketeering activity which the Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore

1  constitute a "pattern of racketeering activity."

2  240.    The Defendants used, directed the use of, and/or caused to be used, numerous

3  interstate wire communications, including internet advertisements, in service of their scheme

4  through misrepresentations, concealments and material omissions.

5  241.    The Defendants used, directed the use of, and/or caused to be used the Postal

6  Service in service of their scheme by using the Postal Service to send and receive altered cards.

7  242.    In devising and executing the illegal scheme, the Defendants devised and

8  intentionally carried out a scheme and/or artifice to defraud consumers or to obtain money from

9  consumers by means of materially false or fraudulent pretenses, representations, promises, or

10  omissions of material facts. For the purpose of executing the illegal scheme, the Defendants

11  committed these racketeering acts intentionally and knowingly with the specific intent to advance

12  the illegal scheme.

13  243.    Many of the precise dates of the fraudulent uses of the interstate wire facilities and

14  Postal Service cannot be alleged without access to the Defendants' books and records. However,

15  Plaintiffs has described the types of acts of mail and wire fraud that occurred.  On information

16  and belief, Defendants routinely used wire facilities and the Postal Services in furtherance of the

17  scheme.

18  244.    The Defendants have undertaken the practices described herein as part of a

19  common scheme and conspiracy in violation of 18 U.S.C. § 1962(d).  On information and belief,

20  various other persons, firms and corporations, including third-party entities and individuals not

21  named as Defendants in this Complaint, have participated as co-conspirators with the Defendants

22  in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain

23  revenues, increase market share, and/or minimize losses for the Defendants and their unnamed

24  co-conspirators throughout the illegal scheme and common course of conduct.

25  245.    The Defendants aided and abetted others in the violations of the above laws,

26  thereby rendering them indictable as principals in the 18 U.S.C. §§ 1341 and 1343 offenses.

27  246.    On information and belief, the Defendants and each member of the conspiracy,

28  with knowledge and intent, have agreed to the overall objectives of the conspiracy and

1  participated in the common course of conduct to commit acts of fraud and indecency in grading

2  and selling the altered cards.

3      247.    For the conspiracy to succeed, each of the Defendants and their coconspirators had

4  to agree to implement and use the similar devices and fraudulent tactics against their intended

5  targets.

6      248.    The Defendants knew and intended that consumers would rely on the material

7  misrepresentations and omissions made by them about their services regarding altered cards.  As

8  fully alleged herein, Plaintiff and the Class Members relied upon Defendants' representations and

9  omissions that were made or caused by them in using Defendants' services.

10     249.    As described herein, the Defendants engaged in a pattern of related and continuous

11  predicate acts for years.  The predicate acts also had the same or similar results, participants,

12  victims, and methods of commission. The predicate acts were related and not isolated events.

13     250.    The predicate acts all had the purpose of generating significant revenue and profits

14  for the Defendants.

15     **Injury**

16     251.    By reason of, and as a result of the conduct of the Defendants, and in particular,

17  their pattern of racketeering activity, Plaintiff and Class Members have been injured in their

18  business and/or property in multiple ways.  This includes, without limitation, lost value of their

19  PSA rated cards due to the decrease consumer confidence in PSA ratings as well as lost value in

20  specific cards which turned out to be altered and experienced significant decreases in value.  The

21  financial loss suffered by Plaintiff and the Class Members as a result of the unlawful enterprise is

22  concrete and measurable because Plaintiff and the Class Members spent substantial sums in

23  payments to PSA and have also experienced tangible loss in value to the PSA rated cards that

24  they have in their possession.

25     <u>**PRAYER FOR RELIEF**</u>

26     WHEREFORE, Plaintiff, on behalf of himself, and on behalf of the members of the Class,

27  prays for judgment against Defendants as follows:

28     A.  Certification of this class action on behalf of the Class;

-38-

CLASS ACTION COMPLAINT

1      B. Designation of Plaintiff as the class representative;

2      C. A declaration that Defendants' practices violate the various laws under which

3         claims are brought.

4      D. An injunction requiring Defendants to cease violating the law.

5      E. An award of actual, statutory, and punitive damages and penalties;

6      F. Prejudgment and post judgment interest on all sums awarded;

7      G. An award of attorneys' fees and costs, as allowed by law;

8      H. Costs of suit; and,

9      I. Such other and further relief as is equitable, just, and proper.[43]

10

11     DATED: February 10, 2020            **BRADLEY/GROMBACHER, LLP**
                                           **LAW OFFICES OF SAHAG MAJARIAN**

12

13                                         By: _____

14                                             Marcus J. Bradley, Esq.
                                               Kiley L. Grombacher, Esq.
15                                             Robert N. Fisher, Esq.
                                               Sahag Majarian II, Esq.

16
                                           *Attorneys for Plaintiff and the Putative Class*
17

18                                  **JURY DEMAND**

19     Plaintiff demands a trial by jury on all issues so triable as a matter of right.

20

21     DATED: February 10, 2020            **BRADLEY/GROMBACHER, LLP**
                                           **LAW OFFICES OF SAHAG MAJARIAN**
22

23                                         By: _____

24                                             Marcus J. Bradley, Esq.
                                               Kiley L. Grombacher, Esq.
25                                             Robert N. Fisher, Esq.
                                               Sahag Majarian II, Esq.
26
                                           *Attorneys for Plaintiff and the Putative Class*
27   _____

28   [43] At this time, Plaintiff does not seek any relief including damages, penalties, and attorneys' fees under the CLRA. Such relief will be sought later by amendment of this Complaint.

-39-

**CLASS ACTION COMPLAINT**

# EXHIBIT '2'

Case 8:20-cv-00632-DOC-ADS    Document 1-1    Filed 04/01/20    Page 42 of 60    Page
ID #:47
Electronically Filed by Superior Court of California, County of Orange, 02/11/2020 05:50:00 PM.
30-2020-01130892-CU-RI-CXC - ROA # 8 - DAVID H. YAMASAKI, Clerk of the Court By Sarah Loose, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**  COLLECTOR'S UNIVERSE, INC., dba PROFESSIONAL
*(AVISO AL DEMANDADO):*  SPORTS AUTHENTICATOR, a Delaware corporation;
PWCC Marketplace, LLC, an Oregon corporation; RICK PROBSTEIN, an individual, dba
PROBSTEIN123, and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
   ERIC SAVOY, an individual, on his own behalf and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):* Orange County Superior Court<br>751 West Santa Ana Blvd.<br>Santa Ana, CA 92701 | 30-2020-01130892-CU-RI-CXC<br><br>Judge William Claster |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
   Robert N. Fisher, Esq. Bradley/Grombacher, LLP, 31365 Oak Crest Drive, Suite 240 Westlake Village, CA 91361
   Tel: (805)270-7100

| DATE:<br>*(Fecha)* 02/11/2020 | Clerk, by<br>*(Secretario)* DAVID H. YAMASAKI, Clerk of the Court<br>*Sloose* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*     Sarah Loose

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* COLLECTOR'S UNIVERSE, INC., DBA PROFESSIONAL SPORTS AUTHENTICATOR, A DELAWARE CORPORATION
   under: [X] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date)* 3 - 2 - 20

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

# EXHIBIT '3'

30-2020-01130892-CU-BT-CXC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By Sarah Loose, Deputy Clerk.

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Robert N. Fisher, Esq. (SBN 302919)
BRADLEY/GROMBACHER LLP
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
TELEPHONE NO.: (805) 270-7100          FAX NO. *(Optional):*
ATTORNEY FOR *(Name):* Plaintiff Eric Savoy and the Putative Class

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: 751 West Santa Ana Blvd.
MAILING ADDRESS: 751 West Santa Ana Blvd.
CITY AND ZIP CODE: Orange, California 92701
BRANCH NAME: Civil Complex Center

CASE NAME: ERIC SAVOY, et al. v. COLLECTORS UNIVERSE, et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [X] Unlimited　　[ ] Limited | [ ] Counter　　[ ] Joinder | 30-2020-01130892-CU-RI-CXC |
| (Amount demanded exceeds $25,000)　(Amount demanded is $25,000) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge William Claster<br>DEPT.: CX104 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Asbestos (04) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Product liability (24) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Medical malpractice (45) | [ ] Commercial (31) | [X] RICO (27) |
| [ ] Other PI/PD/WD (23) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Product liability (24) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Medical malpractice (45) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other PI/PD/WD (23) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is　[ ] is not　complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [X] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary　b. [X] nonmonetary; declaratory or injunctive relief　c. [X] punitive
4. Number of causes of action *(specify):* Eight (8)
5. This case [X] is　[ ] is not　a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 10, 2020

Robert N. Fisher, Esq.
_____　　　　　▶　　　　　_____
(TYPE OR PRINT NAME)　　　　　　　　　　　　　　　　　　　　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

# EXHIBIT '4'

Electronically Filed by Superior Court of California, County of Orange, 02/11/2020 01:54:36 PM.
30-2020-01130892-CU-RI-CXC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Sarah Loose, Deputy Clerk.

1  **BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
2  Kiley L. Grombacher, Esq. (SBN 245960)
Robert N. Fisher, Esq. (SBN 302919)
3  31365 Oak Crest Drive, Suite 240
4  Telephone: (805) 270-7100
Facsimile: (805) 270-7589
5  mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
6
7  **BRADLEY/GROMBACHER, LLP**
Robert N. Fisher (Ca. Bar No. 302919)
8  246 5th Avenue, Suite 522
New York, NY 10001
9  Telephone: (646) 443-6235
rfisher@bradleygrombacher.com
10 *Attorneys for Plaintiff and the Putative Class*

11 (Additional Counsel on Following Page)

12

13              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

14                          **COUNTY OF ORANGE**

15 ERIC SAVOY, an individual, on his own        **CASE NO.** 30-2020-01130892-CU-RI-CXC
behalf and on behalf of all others similarly
16 situated,                                             Judge William Claster

17                                            **DECLARATION OF PLAINTIFF ERIC**
                                              **SAVOY REGARDING PROPER COUNTY**
18              Plaintiffs,                    **FOR COMMENCEMENT AND TRIAL**
                                              **OF A CLAIM UNDER THE CONSUMERS**
19                                            **LEGAL REMEDIES ACT**

20 v.                                            [California Civil Code § 1780(d)]

21
COLLECTOR'S UNIVERSE, INC., dba
22 PROFESSIONAL SPORTS
AUTHENTICATOR, a Delaware corporation;
23 PWCC Marketplace, LLC, an Oregon
corporation; RICK PROBSTEIN, an
24 individual, dba PROBSTEIN123, and DOES 1
through 20, inclusive,
25
26              Defendants.
27
28
                                        -1-
DECLARATION OF PLAINTIFF ERIC SAVOY RE: PROPER COUNTY FOR COMMENCEMENT
AND TRIAL OF A CLAIM UNDER THE CONSUMERS LEGAL REMEDIES ACT

1   **LAW OFFICES OF SAHAG MAJARIAN**
    Sahag Majarian II, Esq. (SBN 146621)
2   18250 Ventura Blvd.
    Tarzana, California 91356
3   Telephone: (818) 609-0807
    Facsimile: (818) 609-0892
4   sahagii@aol.com

5   *Attorneys for Plaintiff and the Putative Class*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PLAINTIFF ERIC SAVOY RE: PROPER COUNTY FOR COMMENCEMENT
AND TRIAL OF A CLAIM UNDER THE CONSUMERS LEGAL REMEDIES ACT

I, Eric Savoy, state and declare as follows:

1.  I have personal knowledge of the matters stated herein except as to those matters stated on information and belief, which I believe to be true.

2.  If called and sworn as a witness, I could and would testify truthfully and competently to the matters stated herein.

3.  I am the named Plaintiff in the above-captioned action and submit this Declaration pursuant to California <u>Civil Code</u> Section 1780(d).

4.  I currently reside in El Cajon, California, located in San Diego County, California.

5.  I am informed and believe that Collector's Universe Inc., dba Professional Sports Authenticator, is a Delaware corporation that has its principal place of business at 1610 E. St Andrew Place, Santa Ana, CA 92705, which is within Orange County and that it is doing business in the County and a substantial portion of the transactions upon which the claim arises took place in Orange County.

6.  I am informed and believe that PWCC Marketplace, LLC, is an Oregon corporation that has its principal place of business at 7560 SW Durham Road, Tigard, OR 97224, and that it is doing business in the County and a substantial portion of the transactions upon which the claim arises took place in Orange County.

7.  I am informed and believe that Rick Probstein is an individual residing in New Jersey and that he is doing business in Orange County.

8.  Accordingly, the Superior Court for the County of Orange having its Civil Complex Center in Santa Ana, CA is the proper place for the trial of this action under California <u>Civil Code</u> Section 1780(d), and this action is properly commenced in that Court.

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed this 7th Day of February, 2020, at El Cajon, California.


Eric Savoy

2

DECLARATION OF ERIC SAVOY

# EXHIBIT '5'

# SUPERIOR COURT OF CALIFORNIA

## ORANGE

**751 W. Santa Ana Blvd**

**Santa Ana, CA 92701**

**(657) 622-5300**

**www.occourts.org**

## NOTICE OF CASE ASSIGNMENT

Case Number: **30-2020-01130892-CU-RI-CXC**

Your case has been assigned for all purposes to the judicial officer indicated below. A copy of this information must be provided with the complaint or petition, and with any cross-complaint that names a new party to the underlying action.

| ASSIGNED JUDGE | COURT LOCATION | DEPARTMENT/ROOM | PHONE |
|---|---|---|---|
| Hon. William Claster | CIVIL COMPLEX CENTER | CX104 | (657) 622-5300 |
| **Hearing:** | **Date:** | **Time:** | |

| JUDGE | COURT LOCATION | DEPARTMENT/ROOM | PHONE |
|---|---|---|---|
| Hon. | | | |

**[ x ]  ADR Information attached.**

## SCHEDULING INFORMATION

**Judicial Scheduling Calendar Information**

Individual courtroom information and the items listed below may be found at: www.occourts.org.

.Case Information, Court Local Rules, filing fees, forms, Civil Department Calendar Scheduling Chart, Department phone numbers, Complex Civil E-filing, and Road Map to Civil Filings and Hearings.

**Ex Parte Matters**

Rules for Ex Parte Applications can be found in the California Rules of Court, rules 3.1200 through 3.1207 at: www.courtinfo.ca.gov.  Trials that are in progress have priority; therefore, you may be required to wait for your ex parte hearing.

**Noticed Motions**

* The following local Orange County Superior Court rules are listed for your convenience:
.  - Rule 307 - Telephonic Appearance Litigants - Call CourtCall, LLC at (310) 914-7884 or (888) 88-COURT.
.  - Rule 380 - Fax Filing, Rule 450 - Trial Pre-Conference  (Unlimited Civil)
.* All Complex Litigation cases are subject to mandatory Electronic Filing, unless excused by the Court.
.* Request to Enter Default and Judgment are strongly encouraged to be filed as a single packet.

**Other Information**

Hearing dates and times can be found on the Civil Department Calendar Scheduling Chart.
.All fees and papers must be filed in the Clerk's Office of the Court Location address listed above.

Date:  02/11/2020

Sarah Strege                                    , Deputy Clerk

## NOTICE OF CASE ASSIGNMENT

# EXHIBIT '6'

Kiley Grombacher
Bradley/Grombacher, LLP
2815 Townsgate Road, Suite 130   Westlake Village, CA 91361

TELEPHONE NO.: (805) 270-7100 | FAX NO. (805) 270-7589 | E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiff: ERIC SAVOY, et al.

**ORANGE COUNTY CIVIL COMPLEX CENTER**
STREET ADDRESS: 751 WEST SANTA ANA BLVD.
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA, CA 92701
BRANCH NAME: SANTA ANA

PLAINTIFF:  ERIC SAVOY, et al.

DEFENDANT:  COLLECTOR'S UNIVERSE, INC., et al.

| PROOF OF SERVICE OF SUMMONS | CASE NUMBER: 30-2020-01130892-CU-RI-CXC |
|---|---|

Ref. No. or File No.: Professional Sports Auth 20191219

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet  *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):*  **Declaration of Plaintiff Eric Savoy Re: Proper County for Commencement and Trial of a Claim Under the Consumers Legal Remedies Act**

3. a.  Party served *(specify name of party as shown on documents served):*
   **COLLECTOR'S UNIVERSE, INC., DBA PROFESSIONAL SPORTS AUTHENTICATOR, A DELAWARE CORPORATION**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Michelle Taylor - Agent for Service**

4. Address where the party was served:  **1610 E Saint Andrew Pl**
   **Santa Ana, CA 92705-4941**

5. I served the party *(check proper box)*
   a. ☐ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*     (2) at *(time):*

   b. ☑ **by substituted service.**  On *(date):* 3/2/2020  at  *(time):* **11:45 AM** I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
   **CITLALLY RODRIGUEZ - Secretary, Authorized to Accept**
   Age: 35 yrs Weight: 170 lbs Hair: Bk Sex: Female Height: 5'5" Eyes:  Race: Hisp

   (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*   from *(city):*                    **or** ☑ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]
**PROOF OF SERVICE OF SUMMONS**
Code of Civil Procedure, § 417.10
POS010-1/VN175912

PETITIONER: ERIC SAVOY, et al.

RESPONDENT: **COLLECTOR'S UNIVERSE, INC., et al.**

CASE NUMBER:
**30-2020-01130892-CU-RI-CXC**

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) *(Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of: **COLLECTOR'S UNIVERSE, INC., DBA PROFESSIONAL SPORTS AUTHENTICATOR, A DELAWARE CORPORATION**

    under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)                ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)          ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)              ☐ 415.46 (occupant)

                                       ☐ other:

7. **Person who served papers**

a. Name: **Miguel Ruiz - Commercial Process Serving, Inc.**

b. Address: **674 County Square Drive, Suite 107  Ventura, CA 93003**

c. Telephone number: **(805) 650-9291**

d. **The fee** for service was: **$ 185.70**

e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

        (i) ☐ owner    ☐ employee    ☑ independent contractor.

        (ii) Registration No.: **2687**

        (iii) County: **Orange County**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **3/2/2020**

**Commercial Process Serving, Inc.**
**674 County Square Drive, Suite 107**
**Ventura, CA 93003**
**(805) 650-9291**
**www.comproserve.net**

_____
**Miguel Ruiz**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶

_____
(SIGNATURE)

Attorney or Party without Attorney:
Kiley Grombacher
Bradley/Grombacher, LLP
2815 Townsgate Road, Suite 130
Westlake Village, CA 91361
TELEPHONE No.: (805) 270-7100        FAX No. (Optional): (805) 270-7589
E-MAIL ADDRESS (Optional):
Attorney for: Plaintiff ERIC SAVOY, et al.

FOR COURT USE ONLY

Ref No. or File No.:
Professional Sports Auth 20191219

Insert name of Court, and Judicial District and Branch Court:
ORANGE COUNTY CIVIL COMPLEX CENTER - SANTA ANA

Plaintiff: ERIC SAVOY, et al.

Defendant: COLLECTOR'S UNIVERSE, INC., et al.

| PROOF OF SERVICE BY MAIL | HEARING DATE: | TIME: | DEPT.: Civil-Complex | CASE NUMBER: 30-2020-01130892-CU-RI-CXC |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action.  I am employed in the county where the mailing occured.

2. I served copies of the Summons; Complaint; Civil Case Cover Sheet (served in complex cases only); Declaration of Plaintiff Eric Savoy Re: Proper County for Commencement and Trial of a Claim Under the Consumers Legal Remedies Act;

3. By placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at VENTURA, California, addressed as  follows:

    a. Date of Mailing:        March 2, 2020
    b. Place of Mailing:      VENTURA, CA
    c. Addressed as follows:  COLLECTOR'S UNIVERSE, INC., DBA PROFESSIONAL SPORTS
                         AUTHENTICATOR, A DELAWARE CORPORATION
                         ATTENTION: Michelle Taylor - Agent for Service
                         1610 E Saint Andrew Pl
                         Santa Ana, CA 92705-4941

I am readily familiar with the firm's practice for collection and processing of documents for mailing.  Under that practice, it would be  deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at VENTURA, California in the ordinary course of  business.

Fee for Service: **$ 185.70**

**Commercial Process Serving, Inc.**
**674 County Square Drive, Suite 107**
**Ventura, CA 93003**
**(805) 650-9291**
**Ref: Professional Sports Auth 20191219**

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on **March 2, 2020**.

Signature: _____

**Sal Pujol**

## PROOF OF SERVICE BY MAIL

Order#: VN175912/mailproof

# EXHIBIT '7'

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE** | |
|---|---|
| Civil Complex Center<br>751 W. Santa Ana Blvd<br>Santa Ana, CA 92701 | |
| **SHORT TITLE:** Eric Savoy vs. Collector's Universe, Inc. | |
| **CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE** | CASE NUMBER:<br>**30-2020-01130892-CU-RI-CXC** |

I certify that I am not a party to this cause. I certify that the following document(s), dated , have been transmitted electronically by Orange County Superior Court at Santa Ana, CA. The transmission originated from Orange County Superior Court email address on March 11, 2020, at 3:32:33 PM PDT. The electronically transmitted document(s) is in accordance with rule 2.251 of the California Rules of Court, addressed as shown above. The list of electronically served recipients are listed below:

BRADLEY/GROMBACHER LLP
RFISHER@BRADLEYGROMBACHER.COM

Clerk of the Court, by: _____ , Deputy

---

**CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE**

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 03/11/2020                    TIME: 11:21:00 AM        DEPT: CX104

JUDICIAL OFFICER PRESIDING: William Claster
CLERK: Gus Hernandez
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: None

CASE NO: **30-2020-01130892-CU-RI-CXC**   CASE INIT.DATE: 02/11/2020
CASE TITLE: **Eric Savoy vs. Collector's Universe, Inc.**
CASE CATEGORY: Civil - Unlimited     CASE TYPE: RICO

---

EVENT ID/DOCUMENT ID: 73243047
**EVENT TYPE:** Chambers Work

---

**APPEARANCES**

---

There are no appearances by any party.

The Court finds that this case is exempt from the case disposition time goals imposed by California Rule of Court 3.714 due to exceptional circumstances and estimates that the maximum time required to dispose of this case will exceed twenty-four months due to the following case evaluation factor of California Rules of Court 3.715 & 3.400: Case is complex.

Each party who has not paid the Complex fee of $ 1,000 as required by Government Code section 70616 shall pay the fee to the Clerk of the Court within 10 calendar days from date of this minute order. Failure to pay required fees may result in the dismissal of complaint/cross-complaint or the striking of responsive pleadings and entry of default.

The Case Management Conference is scheduled for 05/21/2020 at 08:30 AM in Department CX104.

This case is subject to mandatory electronic filing pursuant to Superior Court Rules, County of Orange, Rule 352. Plaintiff shall give notice of the electronic filing requirement to all parties of record or known to plaintiff, and shall attach a copy of this minute order.

**The Court issues the attached Case Management Conference Order.**

Court orders clerk to give notice.

---

## CASE MANAGEMENT CONFERENCE ORDER

Prior to the Initial Case Management Conference, counsel for all parties are ordered to meet and confer in person (no later than 10 days before the conference) and discuss the following topics. Additionally, counsel shall be prepared to discuss these issues with this Court at the Initial Case Management Conference:

1. Parties and the addition of parties;
2. Claims and defenses;
3. Issues of law that, if considered by the Court, may simplify or foster resolution of the case.
4. Appropriate alternative dispute resolution (ADR) mechanisms (e.g., mediation, mandatory settlement conference, arbitration, mini-trial, etc.);
5. A plan for preservation of evidence;
6. A plan for disclosure and discovery;
7. Whether it is possible to plan "staged discovery" so that information needed to conduct meaningful ADR is obtained early in the case, allowing the option to complete discovery if the ADR effort is unsuccessful;
8. Whether a structure of representation such as liaison/lead counsel is appropriate for the case in light of multiple plaintiffs and/or multiple defendants;
9. Procedures for the drafting of a Case Management Order, if appropriate;
10. Any issues involving the protection of evidence and confidentiality.

**Counsel for plaintiff is to take the lead in preparing a Joint Initial Case Management Conference report to be filed on or before** *05-14-20* .

The Joint Initial Case Management Conference Report is to include the following:

1. A list of all parties and counsel;
2. A statement as to whether additional parties are likely to be added and a proposed date by which all parties must be served;
3. An outline of the claims and cross-claims and the parties against whom each claim is asserted;
4. Service lists and procedures for efficient service filing;
5. Whether any issues of jurisdiction or venue exist that might affect this Court's ability to proceed with this case;
6. Applicability and enforceability of arbitration clauses;
7. A list of all related litigation pending in other courts, a brief description of any such litigation, and a statement as to whether any additional related litigation is anticipated;
8. A description of core factual and legal issues;
9. A description of legal issues that, if decided by the Court, may simplify or further resolution of the case;

10. Whether discovery should be conducted in phases or limited; and if so, the order of phasing or types of limitations on discovery;
11. Whether particular documents and witness information can be exchanged by agreement of the parties;
12. The parties' tentative views on an ADR mechanism and how such mechanism might be integrated into the course of the litigation;
13. The usefulness of a written case management order; and
14. A target date and a time estimate for trial.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Initial Case Management Conference Report, the positions of each party or of various parties shall be set forth separately. The parties are NOT to use the case management conference form for non-complex cases (Judicial Council Form CM-110).

Plaintiff shall give notice of the Case Management Conference and serve a copy of this order upon any defendants presently or subsequently served.

ATTORNEYS APPEARING AT THE CASE MANAGEMENT CONFERENCE MUST BE FULLY FAMILIAR WITH THE PLEADINGS AND THE AVAILABLE FACTUAL INFORMATION, AND MUST ALSO HAVE THE AUTHORITY TO ENTER INTO STIPULATIONS. THESE REQUIREMENTS SHALL ALSO APPLY TO ANY FUTURE STATUS CONFERENCES HELD IN THIS CASE.

The Court orders a stay on discovery until after the initial Case Management Conference is held. Notwithstanding the stay, the Court encourages the parties to engage in an informal exchange of information and documents.