UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-00632-DOC-ADS                              Date:  7/21/2020

Title: ERIC SAVOY v. COLLECTORS UNIVERSE, INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

|  Kelly Davis  |  Not Present  |
|---|---|
|  Courtroom Clerk  |  Court Reporter  |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS [15, 26, 27]**

Before the Court are Defendant Collectors Universe, Inc. dba Professional Sports Authenticator's ("PSA") Motion to Dismiss Plaintiff's First Amended Complaint ("PSA Motion") and Defendant Probstein's Motion to Dismiss and Motion to Strike Plaintiff's First Amended Complaint ("Probstein Motion"). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court **GRANTS IN PART** the Motions.

**I.       Background**

   **A. Facts**

The following facts are drawn from the First Amended Complaint in this action ("FAC") (Dkt. 14). This is a putative class action against Defendants Collectors Universe, Inc. dba Professional Sports Authenticator ("PSA"), PWCC Marketplace, LLC ("PWCC"), and Rick Probstein ("Probstein") (collectively, "Defendants"). *See generally* FAC. Plaintiff Eric Savoy ("Plaintiff") and other members of the putative class were

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                                    Date: July 22, 2020

Page 2

customers of the Defendants who used Defendants' services to rate and purchase baseball cards. *Id*. ¶ 32. Plaintiff alleges seven causes of action against Defendants PSA and PWCC and five causes of action against Defendant Probstein for an unlawful scheme involving altering and selling altered baseball cards, as well as related unfair and fraudulent business practices. *See generally id.*

Plaintiff and the members of the putative class were customers of the Defendants who submitted their own baseball cards to PSA for grading, purchased PSA-graded cards, and currently hold altered PSA-graded cards. *Id*. ¶ 32. Defendant PSA is a Delaware corporation with its principal place of business in Santa Ana, California. *Id*. ¶ 44. Defendant PWCC is an Oregon corporation with its principal place of business in Tigard, Oregon. *Id*. ¶¶ 46, 47. PWCC engages in substantial business in California and allegedly directed advertisements for altered baseball cards toward members of the putative class in California. *Id*. ¶ 47. Defendant Probstein is an individual residing in New Jersey, who conducts substantial business in California and allegedly directed advertisements for altered cards toward members of the class in California. *Id*. ¶¶ 48, 49.

Defendant PSA provides a baseball trading card grading service that involves a card owner sending a card to PSA for rating. *Id.* ¶ 10. PSA will then determine whether the card is authentic and unaltered and will grade it on a scale from 1-10 based on the condition of the card. *Id.* If the card is altered, PSA will not grade the card. *Id*. In 2019, a number of baseball card collectors discovered that cards were being altered and still receiving grades from PSA. *Id.* ¶¶ 70, 71. For example, in 2017, a T206 Billy Maloney card was sold at an auction for $81 with a grade of 4.5. *Id.* ¶ 75. It was later sold, Plaintiff alleges, on February 5, 2018 for $1,000 after being altered and submitted to PSA who graded it at 7. *Id*. Plaintiff alleges that collectors have uncovered scores of similar instances of altered cards that were graded by PSA. *Id.* ¶ 76. Plaintiff further alleges that PSA acted preferentially toward customers who submitted greater quantities of cards and paid higher appraisal fees to them, including the allegation that PSA graded altered cards and graded cards at higher values than they would have otherwise. *Id*. ¶ 88. Plaintiff alleges that this conduct was conscious and willful. *Id.* ¶ 167.

Defendant PWCC sells baseball cards and, in its course of business with customers, guarantees efficient and honest services and to handle every trade with integrity by ensuring authenticity and offering full refunds for purchases of professionally-graded cards that are later determined to have been altered prior to purchase. *Id.* ¶ 94. Plaintiff alleges that Defendant PWCC has not upheld these guarantees, as PWCC has knowingly sold altered cards without indicating that they were altered and has refused to issue refunds of the purchase price for those cards. *Id*. ¶ 95. For

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-00632-DOC-ADS                                      Date: July 22, 2020

Page 3

example, Plaintiff alleges that the aforementioned Billy Maloney card was purchased by Defendant PWCC, altered, regraded by PSA, then sold by PWCC with the new altered rating. *Id*. ¶ 97. Plaintiff alleges that PWCC knew the cards were altered because experts in the trading card field should be able to identify alterations. *Id.* ¶ 100. Plaintiff further identifies fraudulent business practices in which he alleges that PWCC engaged, such as employing an "Eye Appeal" system to disproportionately grade cards that were higher in visual appeal in order to deceive customers, and also encouraging its sellers to shill bid— a practice involving fraudulent bidding by the seller in order to drive up action prices—to increase its own profits at the expense of customers who are paying artificially inflated prices. *Id.* ¶¶ 101–107.

Plaintiff alleges that collectors have identified many altered cards sold by Defendant Probstein, such as a Sidney Crosby autographed rookie card that was altered and sold by Probstein. *Id.* ¶¶ 108–109. Plaintiff alleges that Probstein knew he was selling altered cards because experts in the trading card field should be able to identify alterations. *Id*. ¶ 110.

Plaintiff alleges that the Defendants used numerous interstate wire communications, including internet advertisements, in service of their scheme through misrepresentations, concealments, and deceptive omissions. *Id.* ¶ 224. Further, Plaintiff alleges that Defendants used the U.S. Postal Service to further their scheme by using the Postal Service to send and receive altered baseball cards. *Id.* ¶ 225.

Finally, Plaintiff alleges that he and members of the putative class sustained losses, injuries, and damages arising from Defendants' illegal policies. *Id*. ¶ 136.

### B.  Procedural History

On February 11, 2020, Plaintiff filed his class action complaint against Defendants in the Superior Court for the State of California, County of Orange, alleging causes of action for (1) violation of Business & Professions Code § 17200; (2) violation of Business & Professions Code § 17500; (3) violation of California Civil Code § 1750; (4) breach of express warranty; (5) violation of consumer fraud laws; (6) negligent misrepresentation; (7) fraud; (8) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)–(d) ("RICO"). Complaint (Dkt. 1-1) at 1. On April 1, 2020, Defendants removed the action to this Court on the basis of federal question jurisdiction and supplemental jurisdiction. Notice of Removal (Dkt. 1) at 3.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                                                    Date: July 22, 2020

Page 4

   On May 4, 2020, Plaintiff filed his First Amended Complaint ("FAC") (Dkt. 14). In the FAC, Plaintiff alleges causes of action for (1) violation of Business & Professions Code § 17200 against Defendants PSA and PWCC; (2) violation of Business & Professions Code § 17500 against Defendants PSA and PWCC; (3) violation of California Civil Code § 1750 against Defendants; (4) violation of consumer fraud laws against Defendants; (5) negligent misrepresentation against Defendants; (6) fraud against Defendants; and (7) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)–(d) ("RICO") against Defendants.

   On May 21, 2020, Defendant PSA brought a Motion to Dismiss seeking to dismiss Plaintiff's FAC for failure to state a claim. Dkt. 15. On June 1, 2020, Plaintiff opposed the PSA Motion to Dismiss ("PSA Opp'n") (Dkt. 20). On June 8, 2020, Defendant PSA filed its Reply ("PSA Reply") (Dkt. 24).

   On June 9, 2020, Defendant Probstein brought a Motion to Dismiss and Motion to Strike Plaintiff's FAC for failure to state a claim. Dkt. 26.[1] On June 29, 2020, Plaintiff opposed Defendant Probstein's Motion to Dismiss ("Probstein Opp'n") (Dkt. 38). On July 6, 2020, Probstein filed his Reply ("Probstein Reply") (Dkt. 39).

## II.  **Legal Standard**

   Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, courts accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts are not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and materials properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

---

[1] Defendant Probstein also filed a duplicate motion at Dkt. 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-00632-DOC-ADS                                          Date: July 22, 2020

Page 5

     Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III.    Discussion

### A.  Plaintiff Lacks Standing

     Federal courts have an independent obligation to examine standing to determine whether it comports with the "case or controversy" requirement of Article III of the Constitution. U.S. Const. Art. 3, § 2, cl. 1; *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). Article III requires that a plaintiff allege (1) an "injury in fact;" (2) "causation;" and (3) "redressability." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Injury in fact is an invasion of a "legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.*; *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 488, 494 (1974)). In the Ninth Circuit, an injury is "concrete for the purposes of standing if it 'actually exist[s],' meaning it is 'real, and not abstract.'" *Campbell v. Facebook*, 951 F.3d 1106 (9th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548–49 (2016)). In the Ninth Circuit, a plaintiff asserting a claim regarding a good they have purchased cannot establish standing when "the allegations that the [good is] worth less are conclusory and unsupported by any facts," and when "plaintiffs have not, for example, alleged a demonstrable effect on the market for their specific [good] based on documented recalls or declining . . . values." *Cahen v. Toyota Motor Corp.*, 717 Fed. Appx. 720, 723–724 (9th Cir. 2017).

     Plaintiff has failed to identify a concrete injury. Plaintiff lacks standing to bring any claim alleged in his FAC because the allegations he makes—(1) that a card/cards he has purchased from Defendants are devalued; and (2) that Defendants would not abide by their guarantee clause—are conclusory and non-concrete.

     First, Plaintiff fails to allege a concrete injury arising out of his allegation that a card/cards he has purchased from Defendants lost value because he fails to identify any specific card that has been altered or devalued. Plaintiff instead vaguely asserts that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 20-00632-DOC-ADS                                    Date: July 22, 2020

Page 6

"Defendant PSA represents that it does not grade altered cards when in fact it did grade altered cards. PSA guaranteed that it would reimburse the difference between cards that were misgraded," and "Defendant PWCC represents that it does not sell undisclosed altered cards when it in fact did sell undisclosed altered cards. PWCC guarantees that it will refund purchasers of undisclosed altered cards." FAC ¶¶ 142, 143. Nowhere in the FAC does Plaintiff identify a concrete and particularized instance of purchasing a card that lost value or identify a card Plaintiff would not have purchased in the absence of Defendants' business practices. Further, Plaintiff fails to provide any basis for alleging that the cards were doctored, the price he paid for any card, or the before and after prices of any card/cards that Plaintiff purchased. A conclusory allegation of injury with no facts showing the loss in value of a good is insufficient to establish injury. *See Cahen*, 717 Fed. Appx. at 723.

Here, Plaintiff provides conclusory allegations with no factual backing that a card/cards lost value. FAC ¶ 43 ("During the relevant time period, Plaintiff believes that he purchased, at a premium price, at least one PSA graded card . . . and that he purchased at least one altered card from PWCC and Probstein. By creating doubt in the authenticity and value of rated cards, Defendants have caused all of Plaintiff's cards to decrease in value."). Further, he fails to support his claim that he would not have purchased the cards in the absence of Defendants' purported illegal practices or that Defendants would not abide by their guarantees. FAC ¶¶ 144, 156, 184 ("On information and belief, neither PSA nor PWCC have stood by their guarantees . . . Plaintiff and the other members of the Classes would not have purchased cards rated by PSA or paid PSA for rating services but for Defendant's deceptive and unlawful acts."). Because Plaintiff fails to concretely or specifically allege injury in fact related to the devaluing of a card/cards sold by Defendants, Plaintiff lacks standing to bring these claims.

Second, Plaintiff fails to allege injury by virtue of his contention that Defendants would not abide by their satisfaction guarantee clause. FAC ¶¶ 144, 156 ("On information and belief, neither PSA nor PWCC have stood by their guarantees."). Like Plaintiff's allegation that a card/cards he purchased from Defendants lost value, this allegation is vague, speculative, and wholly conclusory. In fact, nowhere in the FAC does Plaintiff claim to have attempted to take advantage of the satisfaction guarantee. Because Plaintiff fails to allege that he has attempted to avail himself of the guarantee and does not make any other specific allegation in support of his conclusive contention that "[o]n information and belief, neither PSA nor PWCC have stood by their guarantees," Plaintiff's allegation that he has suffered injury as a result of Defendants' purported failure to stand by their satisfaction guarantee is vague and speculative and fails to satisfy

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                                   Date: July 22, 2020

Page 7

the standing requirement that facts giving rise to injury be pleaded concretely and particularly.

Further, it is well established that if a plaintiff utilizes and is granted a refund pursuant to a satisfaction guarantee clause, then that plaintiff has suffered no injury and hence has no standing. *See, e.g.*, *Minkler v. Kramer Lab. Inc.*, 2013 WL 3185552, at *3 (C.D. Cal. Mar. 1, 2013); *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1152 (N.D. Cal. 2010). It follows, then, that if a plaintiff has failed to take advantage of a satisfaction guarantee to redress his injury, the plaintiff cannot clearly and sufficiently allege injury. And even if there is standing on this basis, it is not clear whether Plaintiff's claims based on the satisfaction clause are ripe for adjudication. Ripeness is related to standing in that courts will at times decline to exercise jurisdiction when there is no concrete claim to adjudicate. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (*en banc*). It is unclear whether Plaintiff has pursued a remedy for his injury under the guarantee provision, rendering Plaintiff's satisfaction guarantee allegations non-concrete. Therefore, it is not clear whether the claims are ripe under the allegations as they are currently pleaded. The facts Plaintiff pleads in support of his claim to injury as a result of Defendants' purported breach of their guarantee clauses, as required to establish Article III standing, are non-concrete and conclusory. Accordingly, Plaintiff lacks standing to bring these claims.

Because the allegations that Plaintiff pleads in his FAC are vague and non-concrete, Plaintiff has failed to satisfy Article III's injury-in-fact requirement. Accordingly, each and every claim pleaded in Plaintiff's FAC is **DISMISSED WITH LEAVE TO AMEND** to allow Plaintiff to correct the deficient pleading as it relates to standing.

In addition to Plaintiff's failure to adequately plead injury in fact as a requirement for Article III standing, Plaintiff's claims fail to satisfy the requirements of Fed. R. Civ. P. 8(a) for a number of reasons. The Court addresses these deficiencies below.

### B. Failure to State a Claim

#### 1. Plaintiff's Seventh Claim for RICO Violations Fails

PSA argues that Plaintiff's RICO claim brought under section 1962(c) fails because Plaintiff fails to adequately allege the requirements of a valid RICO claim. PSA Mot. at 16. The FAC fails to adequately allege there was an enterprise, as Plaintiff states

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                                    Date: July 22, 2020

Page 8

nothing more than a formulaic recitation of the RICO elements and fails to state any facts showing the structure of the alleged enterprise, the length of time the alleged enterprise has been in existence, or that Defendants acted with a common purpose. *Id.* The FAC identifies only three allegedly altered cards—cards which had been identified in a news article, not cards that belong to Plaintiff—but fails to state who sold them or any other facts supporting an enterprise. FAC ¶¶ 73–75; PSA Mot. at 16.

Further, PSA argues, Plaintiff fails to allege a pattern of racketeering activity because he fails to plead any facts showing that the racketeering predicates are related, or that they amount to or pose a threat of continued criminal activity. PSA Mot. at 18. The FAC has not pleaded a single identified instance of racketeering, let alone a pattern, as Plaintiff has identified only three allegedly doctored cards and has shown no connection between the three instances. *Id.* at 19. Lastly, PSA argues that Plaintiff's section 1962(d) claim fails because his 1962(c) cause of action fails to state a claim. *Id.* Defendant Probstein also argues that Plaintiff fails to plead any facts to establish a racketeering activity pattern, as Plaintiff does not plead any facts showing any particular illegal act performed by Probstein. Probstein Mot. at 20.

Plaintiff responds that he has alleged concrete losses arising from paying PSA for a service that he contends was not performed as advertised and therefore not worth what he paid for it. PSA Opp'n at 12–13. Plaintiff further argues that he has alleged a RICO enterprise because he alleges (1) the common purpose of profiting from the grading and sale of altered cards; (2) that PSA and Probstein participated in the operation of the enterprise; and (3) that the enterprise had longevity and functioned as a continuing unit through at least the end of summer of 2019. *Id.*; FAC ¶¶ 206, 208, 211–217. Plaintiff argues that he has adequately pleaded facts to establish a pattern of racketeering activity because he has alleged that PSA used the Postal Service to send and receive altered cards and that Defendants used interstate communications in furtherance of their scheme, through false representations and representations made online. FAC ¶¶ 222–227; PSA Opp'n at 13–14. Defendant PSA replies that the facts about the cards at issue, the basis of the cards' alleged loss of value, and why he believes the cards were altered or misgraded, are within Plaintiff's possession and control and he has not pleaded any of them, except for vague, conclusory statements amounting to pure speculation. PSA Reply at 2–3.

RICO section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." 18 U.S.C. § 1962(c). To

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                                    Date: July 22, 2020

Page 9

bring a RICO claim under section 1962(c), a plaintiff must show five elements: (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity, and (v) injury in the plaintiffs' business or property by the conduct constituting the violation. *See Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Further, "an enterprise includes any union or group of individuals associated in fact." *United States v. Turkette*, 452 U.S. 576, 580 (1981). To establish enterprise, a plaintiff must allege: "(1) a common purpose, (2) an ongoing organization, and (3) a continuing unit." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). And, "if the section 1962(c) claim does not state an action upon which relief could ever be granted, regardless of evidence, then the section 1962(d) claim cannot be entertained." *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997).

To show the existence of an association-in-fact "enterprise" within the meaning of RICO, the complaint must describe "'a group of persons associated together for a common purpose of engaging in a course of conduct[]' . . . [and] must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *Turkette*, 452 U.S. at 583). Further, "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Doan v. Singh*, 617 Fed. Appx. 684, 685 (9th Cir. 2015) (quoting *Turkette*, 452 U.S. at 583).

Plaintiff alleges that "the enterprise functioned by representing that fraudulently altered trading cards were not altered and were in fact highly desirable cards in excellent condition and by selling those cards to the consuming public" for the purpose of "increas[ing] revenue for the Defendants . . . associated-in-fact with the enterprise's activities through the illegal scheme to grade and sell the altered cards . . . until at least the summer of 2019," and that Defendant "PSA graded the altered cards," Defendant "PWCC sold altered cards," and Defendant "Probstein sold altered cards," which satisfies Plaintiff's burden to identify what each individual did, when they did it, and how they functioned together as a continuing unit. FAC ¶¶ 211, 213, 217–19; *see Doan*, 617 Fed. Appx. at 686. Therefore, Plaintiff's FAC sufficiently alleges an association-in-fact enterprise under RICO.

However, to establish a "pattern of racketeering activity" under RICO, a plaintiff must allege at least two predicate acts within ten years of each other, though these two acts are not necessarily sufficient, and a plaintiff must also show that the racketeering predicates are related and "that they amount to or pose a threat of continued criminal

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                                    Date: July 22, 2020

Page 10

activity." 18 U.S.C. § 1962(c); *see, e.g.*, *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004); *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Here, Plaintiff alleges mail and wire fraud as RICO predicates. FAC ¶ 222; 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud). Because Plaintiff seeks to plead RICO's pattern element through predicate acts of mail and wire fraud, the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply and require Plaintiff to plead the "who, what, when, where, and how" of Defendants' alleged fraudulent conduct. *Doan*, 617 Fed. Appx. at 685 (9th Cir. 2015); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiff has not met the heightened pleading requirements of Rule 9(b). The FAC identifies that Defendants "used, directed the use of, and/or caused to be used, numerous interstate wire communications, including internet advertisements, in service of their scheme" and that Defendants "used, directed the use of, and/or caused to be used the Postal Service in service of their scheme by using the Postal Service to send and receive altered cards." FAC ¶¶ 224–225.  Plaintiff fails to describe the place, timing, specific parties involved, or specific altered cards that have been sent and received by the Defendants. Without these additional details, Plaintiff's FAC cannot show that the RICO predicate acts rise to a pattern of racketeering activity, much less that they are related and "amount to or pose a threat of continued criminal activity." *Turner*, 362 F.3d at 1229. Because Plaintiff has not pleaded the circumstances of the mail and wire fraud allegations with sufficient specificity, Plaintiff's section 1962(c) RICO claim fails. And as the section 1962(c) claim fails to state a claim, Plaintiff's section 1962(d) claim necessarily fails. *See, e.g.*, *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997). Accordingly, Plaintiff's Seventh Claim for RICO violations is **DISMISSED WITH LEAVE TO AMEND**.

## 2.  Plaintiff's Fourth and Sixth Claims Fail to Meet the Heightened Pleading Standard for Fraud

Both PSA and Probstein argue that Plaintiff's Fourth Claim for "Violation of Consumer Fraud Laws" fails because it presents no cognizable cause of action. PSA Mot. at 13; Probstein Mot. at 10. Further, Defendant Probstein argues that Plaintiff provides no facts in support of a deceptive practice by Probstein, again, because Plaintiff fails to plead a single representation made by Probstein regarding a purchase of a card. *Id*. at 11. Therefore, Probstein contends, Plaintiff fails to meet the heightened pleading requirement for fraud. *Id*.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                                    Date: July 22, 2020

Page 11

Plaintiff responds that he has adequately plead fraud, as he argues that he has alleged how Probstein and PSA were involved in a scheme to grade and sell altered cards while concealing that they were, in fact, altered. Probstein Opp'n at 4.

Regarding Plaintiff's Sixth Claim for fraud, PSA argues that it fails because it does not meet the heightened pleading requirements for fraud or mistake pursuant to Fed. R. Civ. P. 9(b). PSA Mot. at 14. Defendant PSA argues that because Plaintiff makes broad, vague assertions of wrongdoing, and fails to specify any doctored cards that he owned or lost money on, these allegations are insufficient to support a fraud claim under Rule 9(b). *Id*. at 15. Therefore, PSA argues, Plaintiff's fraud claim fails. *Id*. Defendant Probstein also argues that Plaintiff fails to state with particularity the circumstances constituting fraud, including times, dates, places, and other additional details of the alleged fraudulent activity. Probstein Mot. at 15. Specifically, Probstein contends, Plaintiff fails to plead facts showing that a misrepresentation occurred, as Plaintiff has asserted no facts to establish what Probstein had represented, and the facts that Plaintiff does allege are conclusory. *Id*. at 16–17.

Plaintiff argues that he has adequately alleged fraud, as he has pleaded facts showing that that PSA and Probstein made misrepresentations and that he was harmed by his reliance on those misrepresentations. PSA Opp'n at 12; Probstein Opp'n at 5. Further, Plaintiff argues that he has alleged the requisite mental state, as he indicated that "PSA knew or should have known that it was grading altered cards," and "Defendants knew [their] representations were false when made." FAC ¶¶ 77, 196; PSA Opp'n at 12.

The elements of fraud in California are: "(1) "misrepresentation," including either a "false representation, concealment or nondisclosure"; (2) "knowledge of falsity"; (3) "intent to defraud"; (4) "justifiable reliance"; and (5) damages. *See, e.g.*, *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012). To adequately state a claim for fraud and for a violation of a California consumer fraud law, a plaintiff must meet the heightened pleading standard for fraud claims such that the circumstances constituting the alleged fraud be specific enough to give defendants notice of their misconduct so that they can defend against the charge. Fed. R. Civ. P. 9(b); *see, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                    Date: July 22, 2020

Page 12

Plaintiff fails to plead facts that, if taken as true, would entitle Plaintiff to relief for fraud. In alleging his Fourth Claim, Plaintiff alleges that "Plaintiff and the other members of the Classes purchased cards rated by Defendant PSA or paid PSA for rating services which misrepresented the characteristics and nature of the rating service and the guarantee that cards were properly rated," and "Defendants . . . uniformly represent[ed] to Plaintiff and each member of the Classes that PSA only graded unaltered cards and PWCC did not sell altered cards without disclosing the same . . . Defendants' representations and omissions were false, untrue, misleading, deceptive, and/or likely to deceive." FAC ¶¶ 183, 178–79. Because Plaintiff does not identify circumstances such as *what* single card that he purchased that lost value or that, in the absence of Defendants' fraudulent business practices, he would not have purchased, or *when* he purchased it, Plaintiff fails to meet the heightened pleading requirements of Rule 9(b) for fraud for his Fourth Claim. Similarly, in his Sixth Claim for fraud, Plaintiff fails to identify *what* cards he purchased, *what* the value of the card/cards was and *what* the loss in value was, and *when* he purchased each card that he alleges was fraudulently purchased. For these reasons, among other deficiencies, Plaintiff's Sixth Claim fails to state a claim for fraud. Because Plaintiff fails to meet the heightened pleading standard for fraud, Plaintiff's Fourth and Sixth claims for fraud are **DISMISSED WITH LEAVE TO AMEND**.

## IV.    Disposition

For the reasons set forth above, the Court **GRANTS IN PART** Defendants' Motions to Dismiss. In particular, the Court:

—**DISMISSES WITH LEAVE TO AMEND** all claims for lack of standing and the Fourth, Sixth, and Seventh claims for failure to state a claim.

Plaintiff may file an amended complaint on or before August 3, 2020. Given that this Court's jurisdiction is based on the sole federal RICO claim against all Defendants, if Plaintiff cannot adequately plead a claim under RICO, the Court will remand the action for lack of jurisdiction.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                        Initials of Deputy Clerk: kd

CIVIL-GEN

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 20-00632-DOC-ADS                                        Date: July 22, 2020

                                                                        Page 13